**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**AVIVA STAHL**,

                      Plaintiff,

    v.

**FEDERAL BUREAU OF PRISONS**, and
**DEPARTMENT OF JUSTICE**,

                    Defendants.

**No. 19-cv-4142 (BMC)**

**(Cogan, J.)**

---

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Betsy Ginsberg
Director
Cardozo Civil Rights Clinic

Kharis Lund
Ciera Foreman
Legal Interns
Cardozo Civil Rights Clinic
55 5th Ave., 11th Floor
New York, NY 10003
(212) 790-0871

*Attorneys for Plaintiff*

**Dated: February 10, 2020**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ........................................................................................................ 3

      A.   Plaintiff's FOIA Request ............................................................................ 3

      B.   Defendants' Response ................................................................................. 3

      C.   BOP's Policy on Hunger Strikes and the Involuntary Medical Treatment Administered in the Withheld Videos .......................................................... 5

      D.   Procedural Posture ..................................................................................... 7

ARGUMENT .............................................................................................................. 7

I.     DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING ALL VIDEOS UNDER EXEMPTION 7(E) .................................................................. 8

      A.   The Involuntary Medical Treatment Videos Were Not Compiled for Law Enforcement Purposes ............................................................................... 9

      B.   The Involuntary Medical Treatment Videos Do Not Disclose Techniques and Procedures for Law Enforcement Investigations .................................... 11

      C.   The Involuntary Medical Treatment Videos Are Known to the Public .................... 13

II.    THE DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING ALL VIDEOS UNDER EXEMPTION 7(F) ...................................... 15

      A.   Defendants Cannot Demonstrate with Sufficient Specificity the Harm that They Claim Could Result from the Disclosure of the Videos ........................................... 16

      B.   Defendants Cannot Identify "Any Individual" with Sufficient Specificity .............. 19

III.   THE DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING ALL VIDEOS UNDER EXEMPTIONS 6 AND 7(C) ...................... 20

IV.   THE DEFENDANTS FAIL TO MEET THEIR BURDEN TO SHOW NO MATERIAL WITHIN THE VIDEOS IS SEGREGABLE .................................................. 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## <u>CASES</u>

*ACLU v. D.H.S.*, 243 F. Supp. 3d 393 (S.D.N.Y. 2017)................................................ 15

*ACLU v. DOD*, 543 F.3d 59 (2d Cir. 2008),
   *vacated on other grounds*, 558 U.S. 1042 (2009)............................................ 19, 20

*ACLU v. DOJ*, 229 F. Supp. 3d 259 (S.D.N.Y. 2017).................................................. 24

*ACLU v. DOJ*, 655 F.3d 1 (D.C. Cir. 2011) ............................................................... 23

*Albuquerque Pub. Co. v. DOJ*, 726 F. Supp. 851 (D.D.C. 1989)................................. 16

*Allard K. Lowenstein Intern. Human Rights Project v. D.H.S.*,
   626 F.3d 678 (2d Cir. 2010) ............................................................................. 12

*Am. Immigration Council v. D.H.S.*, 950 F. Supp. 2d 221 (D.D.C. 2013) ............... 9, 14

*Amuso v. DOJ*, 600 F. Supp. 2d 78 (D.D.C. 2009)..................................................... 17

*Bartholdi Cable Co. v. F.C.C.*, 114 F.3d 274 (D.C. Cir. 1997).................................. 21

*Bartko v. DOJ*, 898 F.3d 51 (D.C. Cir. 2018)........................................................ 9, 10

*Benavides v. Bureau of Prisons*, 774 F. Supp. 2d 141 (D.D.C. 2011)........................ 9, 10, 11, 16

*Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*,
   601 F.3d. 143 (2d Cir. 2010) .............................................................................. 8

*Bryant v. Maffuci*, 923 F.2d 979 (2d Cir. 1991) ......................................................... 8

*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999)............................ 16

*Center for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918 (D.C. Cir. 2003)......................... 10

*Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168 (2d Cir. 2014) ...................... 2

*Davis v. D.H.S.*, No. 11-CV-203 (ARR)(VMS),
   2013 WL 3288418 (E.D.N.Y. June 27, 2013). ............................................... 11, 13

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ......................................................... 7

*Doherty v. DOJ*, 775 F.2d 49 (2d Cir. 1985) ............................................................. 15

*DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) ........................................ 1

*F.B.I. v. Abramson*, 456 U.S. 615 (1982) ................................................................ 16

*Fed. Labor Relations Auth. v. Dep't of Veterans Affairs*, 958 F.2d 503 (2d Cir. 1992) ................ 7

*Garcia v. DOJ, Office of Info. & Privacy*, 181 F. Supp. 2d 356 (S.D.N.Y. 2002) ....................... 17

*Gatore v. D.H.S.*, 177 F. Supp. 3d 46 (D.D.C. 2016) .................................................. 25

*Graff v. F.B.I.*, 822 F. Supp. 2d 23 (D.D.C. 2011) .................................................... 2

*Halpern v. F.B.I.*, 181 F.3d 279 (2d Cir. 1999) ............................................... 7, 9, 17

*Human Rights Watch v. DOJ Fed. Bureau of Prisons*,
    No. 13-CV-7360 (JPO), 2015 WL 5459713 (S.D.N.Y. Sept. 16, 2015) ........................... 10, 11

*Kimberlin v. DOJ*, 139 F.3d 944 (D.C. Cir. 1998) ..................................................... 24

*Knight First Amendment Inst. at Columbia Univ. v. D.H.S.*,
    407 F. Supp. 3d 334 (S.D.N.Y. 2019) ......................................................... 9, 15

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009)............................................. 18

*Long v. DOJ*, 450 F. Supp. 2d 42 (D.D.C.),
    *amended on other grounds*, 479 F. Supp. 2d 23 (D.D.C. 2007)................................... 16

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)..................... 24

*Mingo v. DOJ*, 793 F. Supp. 2d 447 (D.D.C. 2011) ..................................................... 11

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ...................................................... 20

*Nat'l Council of La Raza v. DOJ*, 411 F.3d 350 (2d Cir. 2005) ........................................ 7

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*,
    811 F. Supp. 2d 713 (S.D.N.Y. 2011), *amended on other grounds* (Aug. 8, 2011)................ 21

*New York Times Co. v. U.S. Secret Serv.*, No. 17 Civ. 1885 (PAC),
    2018 WL 722420 (S.D.N.Y. Feb. 5, 2018)....................................................... 19

*Petrucelli v. DOJ*, 51 F. Supp. 3d 142 (D.D.C. 2014)................................................. 17

*Pinson v. DOJ*, 236 F. Supp. 3d 338 (D.D.C. 2017).................................................. 9, 10

*Pinson v. DOJ*, 313 F. Supp. 3d 88 (D.D.C. 2018)..................................... 11, 13, 16, 21

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) ......................................................... 10

*Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015) ................................. 21

*Quinon v. F.B.I.*, 86 F.3d 1222 (D.C. Cir. 1996) ........................................................... 9

*Rosenberg v. DOD*, 342 F. Supp. 3d 62 (D.D.C. 2018) ................................................ 14

*Ruston v. DOJ*, No. 06-0224 (RMU), 2007 WL 809698 (D.D.C. Mar. 15, 2007) ...................... 18

*Sanchez-Alaniz v. Fed. Bureau of Prisons*, 85 F. Supp. 3d 208 (D.D.C. 2015) .......................... 16

*Schwartz v. D.E.A.*, 13-CV-5004 (CBA) (ST),
    2019 WL 1299192 (E.D.N.Y. Mar. 1, 2019) ...................................................... 23, 24

*Schwartz v. D.E.A.*, No. 13-CV-5004 (CBA)(RML),
    2016 WL 154089 (E.D.N.Y. Jan. 12, 2016), *aff'd*, 692 F. App'x 73 (2d Cir. 2017) .............. 14

*Sluss v. DOJ*, No. 17-cv-00064, 2019 WL 2493447 (D.D.C. June 14, 2019) .............................. 16

*Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728 (D.C. Cir. 2008) ........................ 24

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) ...................................................... 21, 22

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ...................................................... 7, 8

*Vazquez v. DOJ*, 887 F. Supp. 2d 114 (D.D.C. 2012) .................................................. 15

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60 (2d Cir. 2009) ............................................. 7

*Wood v. F.B.I.*, 432 F.3d 78 (2d Cir. 2005) ........................................................... 21

*Zander v. DOJ*, 885 F. Supp. 2d 1 (D.D.C. 2012),
    *on reconsideration in part* (Oct. 31, 2012) ...................................................... 11, 18

## STATUTES

5 U.S.C. § 552(a)(4)(B) .................................................................................... 8

5 U.S.C. § 552(b) ...................................................................................... 23, 25

5 U.S.C. § 552(b)(6) ................................................................................... 3, 20

5 U.S.C. § 552(b)(7)(C) ............................................................................... 3, 20

5 U.S.C. § 552(b)(7)(E) ............................................................................. 4, 8, 9

5 U.S.C. § 552(b)(7)(F)........................................................................................................ 4, 15, 16

## PRELIMINARY STATEMENT

Plaintiff Aviva Stahl, an investigative journalist, seeks to vindicate her rights under the Freedom of Information Act ("FOIA") to obtain records from Defendants Department of Justice ("DOJ") and Federal Bureau of Prisons ("BOP"). Plaintiff's request seeks the disclosure of thirteen videotapes that depict the 2015 involuntary rehydration and feeding of an individual who engaged in a peaceful hunger strike while in custody at the Administrative Maximum Facility in Florence, Colorado ("Florence ADX"). Defendants seek to withhold these videos in their entirety under 5 U.S.C. § 552(b)(6) and (b)(7)(C), (E), and (F). *Infra* Background 3–4 n.1–4.

The purpose of FOIA is to "open agency action to the light of public scrutiny" and to provide "a broad right of access to 'official information.'" *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772–73 (1989) (internal citations omitted). Plaintiff seeks to use FOIA to shed light on a topic that has long been of significant public interest. Decl. of Aviva Stahl Decl. ¶ 8 ("Stahl Decl."). Prisoner hunger strikes have drawn public attention since as early as 1917, when women imprisoned for supporting their right to vote went on hunger strike. *See 'Night of terror': The suffragists who were beaten and tortured for seeking the vote*, Wash. Post (Nov. 10, 2017), https://wapo.st/2S6xoY3. The public remains interested in prison hunger strikes and force-feeding. For example, in 2013, the attention of the nation turned to California, when nearly 30,000 prisoners went on hunger strike to protest long-term isolated confinement. *See, e.g., Hunger Strike by California Inmates, Already Large, Is Expected to Be Long*, N.Y. Times (July 10, 2013), https://nyti.ms/2H1lj04. Hunger strikes at Florence ADX have also captured the public's attention. Since 2001, at least a dozen prisoners have participated in hunger strikes and been force-fed over thousands of times collectively as a result. Stahl Decl. ¶ 6–7. When the purpose of a FOIA request is to contribute to the public understanding of a topic, there is a

1

heightened interest in disclosure. *Graff v. F.B.I.*, 822 F. Supp. 2d 23, 36 (D.D.C. 2011).

Because FOIA creates a "strong presumption in favor of disclosure," courts narrowly construe its exemptions, imposing a high burden on agencies to justify withholding information and resolving doubts in favor of disclosure. *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 173 (2d Cir. 2014) (internal citations omitted). Nonetheless, Defendants here have withheld in their entirety thirteen videos of two involuntary medical treatments administered by BOP to someone who consented to their release.

Defendants cannot meet their burden to show that any of the four claimed exemptions apply. They cannot show that videos of the involuntary medical treatment meet Exemption 7's threshold requirement that the records were compiled for law enforcement purposes, where their own publicly available policy detailing force-feeding procedures states that its objective is the health and welfare of its prisoners. Defendants argue, against the great weight of authority, that the videos were compiled for law enforcement purposes simply because BOP engages in law enforcement activities. Furthermore, they cannot meet either of the additional requirements of Exemption 7(E)—that the videos show law enforcement techniques and procedures unknown to the public—where images and descriptions of the contents of the videos are already in the public domain. Nor can they show, as required by Exemptions 6 and 7(C) and 7(F), that releasing the videos can be expected to cause harm to or invade the privacy interests of "BOP staff" and "third parties," who are already known to the individuals engaging in hunger strikes. They only vaguely describe both the expected harm and individuals to whom harm might come and point to no examples of any attempts at retaliation, despite the thousands of force-feedings at Florence ADX. Furthermore, the agencies made no attempt to meet their affirmative burden to show that there is no segregable material subject to disclosure within any of the videos. The Court should deny

Defendants' motion for summary judgment and order them to disclose the information sought.

## BACKGROUND

Plaintiff Aviva Stahl is an investigative journalist who writes about prisons, national security, and immigration detention. Stahl Decl. ¶¶ 1–3. She has written extensively on federal prisons, including Florence ADX and the hunger strikes there. *Id.* ¶¶ 3–4, 12. For her reporting on Florence ADX, one of the hunger-strikers, Mohammad Salameh, gave her permission to seek his medical records, including any videos of him undergoing involuntary medical treatments administered in response to his hunger strikes. *Id.* ¶ 14.

### A.    Plaintiff's FOIA Request

On February 12, 2018, Ms. Stahl filed a FOIA request (the "Request") seeking Salameh's medical records. Stahl Decl ¶ 14. With Salameh's consent, the Request sought all of his "medical exams, history and physical, operative reports . . . as well as videotapes of any involuntary medical treatment" from January 1, 2002 to December 31, 2015. *Id.* at ¶ 15. On March 23, 2018, Ms. Stahl filed an additional request specifically seeking videos of the involuntary treatment. *Id.*

### B.    Defendants' Response

In February and April 2018, the BOP acknowledged receipt of both of Ms. Stahl's requests, consolidating them into one request. Compl. & Answer ¶ 60; Stahl Decl. ¶ 15, Ex. A. On August 10, 2018, Ms. Stahl received a partial release of records from BOP. Compl. & Answer ¶¶ 75–76. The partial release included 1059 pages of medical records, four of which were partially redacted. Stahl Decl. ¶ 17, Ex. B. The BOP claimed exemptions 5 U.S.C. § 552(b)(6)[1] and (b)(7)(C)[2] over the entirety of the redacted pages by restating the statutory exemption language, and without

---

[1] § 552(b)(6) exempts material constituting "a clearly unwarranted invasion of the personal privacy of third parties."
[2] § 552(b)(7)(C) exempts "records or information complied for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties."

stating which exemptions applied to which pages. Stahl Decl. ¶ 17, Ex. B.

On September 24, 2018, the BOP sent a final response and release, which included 1567 unredacted pages and thirty-seven partially redacted pages of medical records. Compl. & Answer ¶¶ 92–94; Decl. of Erika Fenstermaker, Ex. D ("Fenstermaker Decl."). Additionally, the BOP informed Ms. Stahl that it was withholding six pages of records and six videos in their entirety. Fenstermaker Decl., Ex. D. The BOP broadly claimed the previously cited exemptions in addition to 5 U.S.C. § 552(b)(7)(E)[3] and (b)(7)(F)[4] over the entirety of the redacted pages, withheld pages, and withheld videos, by restating the statutory exemption language, and without stating which exemptions applied to which pages or videos. *Id.*

Despite having claimed throughout the administrative process that the agency had conducted a thorough and adequate search, it took multiple follow-up emails and over eight months for the agency to complete a purported final release. Stahl Decl., ¶ 16, Ex. B; Fenstermaker Decl., Ex. D. However, even then, the release was not complete. On September 11, 2019, ten months after the "final" release and after the commencement of this lawsuit, the agency notified Ms. Stahl that the BOP had located an additional seven responsive videos that it would be withholding pursuant to the same exemptions cited in the September 24, 2018 response. Fenstermaker Decl., Ex. D; Stahl Decl. ¶ 20. In total, the BOP broadly claimed the four cited exemptions to withhold thirteen videos in their entirety, five pages of medical records in their entirety, and partially redacted forty-two pages of medical records. Fenstermaker Decl. ¶¶ 16–17. After the meet and confer process, the parties stipulated that the thirteen videos would be the only remaining subject of the litigation. Oct. 25, 2019 Order re: Joint Stip., ECF No. 16, ¶ K ("Stip.").

---

[3] § 552(b)(7)(E) exempts "records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions."
[4] § 552(b)(7)(F) exempts "records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or physical safety of any individual."

**C.    BOP's Policy on Hunger Strikes and the Involuntary Medical Treatment Administered in the Withheld Videos**

In order to respond to hunger strikes by prisoners, BOP has a Program Statement on Hunger Strikes. Decl. of James Phelps ¶ 8, Ex. A ("Phelps Decl."). The policy is publicly available on BOP's website: http://bit.ly/2UA9Uw4. It details BOP's objectives, the types of vitals procedures to be performed on a prisoner and frequency of those procedures, the equipment used for involuntary treatment, and the type of protective gear staff use. *Id.* (citing Use of Force Program Statement, Phelps Decl., Ex. B, which cites the protective gear list available at 29 C.F.R. 1910).

Mr. Salameh was incarcerated at Florence ADX, H Unit from October 2002 to December 2015.[5] *See* Decl. of Mohammad Salameh ¶ 2 ("Salameh Decl."). After successfully completing the Florence ADX Step-Down Program, Mr. Salameh was transferred to USP Big Sandy, where he has resided in general population since March 2019. *Id.* ¶ 3. While at Florence ADX, he participated in hunger strikes as a peaceful protest. *Id.* ¶¶ 4–5. During his most recent hunger strike, in October and November of 2015, BOP administered two involuntary medical treatments pursuant to BOP policy—an intravenous rehydration on November 4 and a force-feeding on November 11. *Id.* ¶ 6; Phelps Decl. ¶¶ 22, 36. The thirteen videos of these involuntary medical treatments created pursuant to BOP policy are the subject of this lawsuit. Stip., ECF No. 16, ¶ K.

Mr. Salameh's October/November 2015 hunger strike lasted thirty-four days. Salameh Decl. ¶ 5. On November 4, 2015, a team of officers and Lieutenant Sukdeo came to his cell and requested he present himself for restraints to be taken to a medical exam room. *Id.* ¶¶ 12–13. Because of his extreme physical weakness, he was unable to walk to the cell door and instead laid on his stomach on his bed, with his hands behind him, and motioned to Lt. Sukdeo to come in. *Id.*

---

[5] Defendants correctly note that Salameh was convicted in connection with his role in the 1993 World Trade Center bombing but incorrectly note that the bombing was conducted by al Qaeda. Defs' Mem. Supp. Summ. J. 1, 6. *See* NAT'L COMM'N ON TERRORIST ATTACKS UPON THE U.S., THE 9/11 COMMISSION REPORT (2004).

¶ 13.[6] The team hand-cuffed Mr. Salameh with rapid-cuffs and leg irons. Salameh Decl. ¶ 13.

Mr. Salameh was taken to a medical exam room where an Emergency Medical Technician ["EMT"], identified as EMT Huddleston, determined he needed intravenous rehydration. Salameh Decl. ¶¶ 14–15. The officers handcuffed Mr. Salameh in front and put him on a gurney on his back. *Id.* ¶ 16. Huddleston inserted the IV into his right arm. *Id.* ¶ 16. During the treatment, Mr. Salameh's arm bled and he was shivering and shaking because the IV solution was cold compared to his body temperature. *Id.* ¶ 16. Mr. Salameh did not resist the treatment. *Id.* ¶ 24.

One week later, a team of officers and Lieutenant Jones came to his cell and requested he present himself for restraints in order to be taken to a medical exam room. Salameh Decl. ¶ 18. This time, Mr. Salameh was able to walk to the cell door, relying on the cell walls for support due to his physical weakness. *Id.* ¶ 19. The team restrained him with rapid-cuffs, leg irons, and chains. *Id.* ¶ 19. He was taken to the medical exam room in a wheelchair. *Id.* ¶ 19. A physician assistant ["PA"], identified as PA Osagie, determined he required force-feeding, and the treatment was administered to Mr. Salameh while he was restrained in the same manner in the wheelchair. *Id.* ¶¶ 20–21. To begin the treatment, an officer held his head while Osagie inserted the naso-gastric tube into his nose down to his stomach. *Id.* ¶ 22. Throughout the treatment, the officer stood behind him, but did not hold his head. *Id.* ¶ 22. During this treatment, due to the irritation and obstruction of the tube in his throat, Mr. Salameh involuntary vomited.[7] Salameh Decl. ¶ 23. Mr. Salameh did not resist the treatment. Salameh Decl. ¶ 24.

---

[6] Defendants' declarant Phelps, who watched the video but was not himself present at the scene, claims, without supporting evidence, that Mr. Salameh refused to be removed from his cell. *See* Phelps Decl. ¶ 28.

[7] Mr. Phelps states that Salameh attempted to resist the treatment by deliberately vomiting. Phelps Decl. ¶ 47. Phelps was not present for the treatment, but claims to ascertain this information from viewing the video. Mr. Salameh states that he did not resist the treatment and that vomiting in this instance was involuntary. Salameh Decl. ¶¶ 23–24.

## D.    Procedural Posture

Ms. Stahl filed her Complaint on July 17, 2019. ECF No. 1. The parties reached agreement that all responsive documents had either been disclosed or identified and that Ms. Stahl would no longer seek disclosure of the five pages withheld in full or the forty-two pages withheld in part. Stip., ECF No. 16, ¶¶ G–I. On October 25, 2019, the parties informed the Court that the issue to be briefed on summary judgment is the propriety of BOP's decision to withhold the thirteen videos pursuant to FOIA Exemptions 5 U.S.C. § 552(b)(6), (7)(C) , (7)(E), and (7)(F). *Id.* at K.

## ARGUMENT

FOIA is premised on a policy strongly favoring public disclosure of information possessed by federal agencies. *Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir. 1999); *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 355 (2d Cir. 2005). FOIA requires the government to disclose its records unless they fall within one of the enumerated exemptions set forth in the statute, which are to be narrowly construed, with doubts resolved in favor of disclosure. *Nat'l Council of La Raza*, 411 F.3d at 356; *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). While the nine exemptions protect some records from disclosure in some circumstances, they are not meant to be used to circumvent FOIA's aim of openness and broad disclosure. *Fed. Labor Relations Auth. v. Dep't of Veterans Affairs*, 958 F.2d 503, 508 (2d Cir. 1992).

To prevail in withholding records, "the agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009); *see also Nat'l Council of La Raza*, 411 F.3d at 356. The burden cannot be satisfied by conclusory and generalized allegations of the exemptions. *Vaughn v. Rosen*, 484 F.2d 820, 825–26 (D.C. Cir. 1973) ("[T]he agency may not sweep a document under a general allegation…It is quite possible that part of a document

should be kept secret while part should be disclosed."). To meet its burden, the agency's declarations must detail which portions of each record are disclosable and which are exempt by subdividing the records into manageable parts and applying the claimed exemptions to each part. *Id.* at 827. Defendants fail to meet this burden because they did not apply the four claimed exemptions to the different portions of the thirteen videos, or even separately to each video. Instead, they broadly claim all four exemptions apply to all parts of all thirteen videos.

Furthermore, under FOIA, this Court reviews de novo any agency decision to withhold information. 5 U.S.C. § 552(a)(4)(B). The "agency's decision that the information is exempt from disclosure receives no deference." *Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010). As in other litigation, summary judgment in a FOIA case is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Bryant v. Maffuci*, 923 F.2d 979, 982 (2d Cir. 1991). Defendants cannot meet their burden here because they fail to fulfill the statutory requirements of the claimed exemptions. They do not show that the records were compiled for law enforcement purposes *and* that they reveal law enforcement techniques and procedures previously unknown to the public. Nor do they show that the videos could reasonably be expected to physically endanger any individual *or* that release could be expected to constitute an unwarranted invasion of personal privacy of third parties. Critically, Defendants fail to show that the materials are not segregable.

## I.   DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING ALL VIDEOS UNDER EXEMPTION 7(E)

Withholding the thirteen videos in their entirety under Exemption 7(E) is improper because they meet none of the three requirements of the statute: they (1) were not compiled for law enforcement purposes and (2) would not reveal law enforcement techniques and procedures that are (3) previously unknown to the public. 5 U.S.C. § 522(b)(7)(E). Exemption 7(E) protects from

disclosure records or information compiled for law enforcement purposes only to the extent production of such records or information would disclose "techniques and procedures for law enforcement investigations or prosecutions" that are generally unknown to the public. *Id.*; *Knight First Amendment Inst. at Columbia Univ. v. D.H.S.,* 407 F. Supp. 3d 334, 352 (S.D.N.Y. 2019).

### A.    The Involuntary Medical Treatment Videos Were Not Compiled for Law Enforcement Purposes

Defendants argue that they meet Exemption 7's threshold requirement that the records were "compiled for law enforcement purposes" simply because the BOP engages in law enforcement activities. Defs' Mem. Supp. Summ. J. 11 ("Def's Mem."). They ignore the well-established rule that no agency's records are considered per se compiled for law enforcement purposes simply because they are maintained by a law enforcement agency. *See Pinson v. DOJ*, 236 F. Supp. 3d 338, 366 (D.D.C. 2017) (finding certain BOP records not compiled for law enforcement purposes and rejecting BOP's position as coming close to the rejected per se rule); *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d 141, 147 (D.D.C. 2011) (rejecting a "per se" application of the Exemption 7 threshold to BOP records); *Am. Immigration Council v. D.H.S.*, 950 F. Supp. 2d 221, 245–46 (D.D.C. 2013) (finding ICE records did not meet the requirement); *Quinon v. F.B.I.*, 86 F.3d 1222, 1229–30 (D.C. Cir. 1996) (finding FBI records did not meet the requirement).

Rather, to qualify as law enforcement records under Exemption 7, "documents must arise out of 'investigations which focus directly on specifically alleged illegal acts…which could, if proved, result in civil or criminal sanctions.'" *Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018) (internal citation omitted) *accord Halpern*, 181 F.3d at 296 (holding that agency withholding under Exemption 7 must "demonstrate[] that the records were compiled in the course of an investigation conducted by a law enforcement agency"). "The law-enforcement-purpose inquiry focuses 'on how and under what circumstances the requested files were compiled,' and 'whether the files

sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Bartko*, 898 F.3d at 64 (internal citation omitted).

To demonstrate that documents were compiled for a law enforcement purpose, an agency must establish "a rational nexus between the investigation and one of the agency's law enforcement duties," and "a connection between an individual or incident and a possible security risk or violation of federal law." *Center for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) (internal citation and quotation marks omitted); *see also Human Rights Watch v. DOJ Fed. Bureau of Prisons*, No. 13-CV-7360 (JPO), 2015 WL 5459713, at *5 (S.D.N.Y. Sept. 16, 2015) (applying the "rational nexus" test from *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982), and ordering release of several BOP records without redactions).

Instead of attempting to show how the withheld videos specifically pertain to an investigation or otherwise were compiled for law enforcement purposes, Defendants lean heavily on the law enforcement duties of BOP, without establishing the nexus between those duties and any "investigation" of a particular individual or incident that could be the subject of the videos. *See* Defs' Mem. 11–12. BOP records are not per se exempt, and thus, simply restating BOP's statutory authority and duties, as Defendants do here, does not meet the threshold requirement. *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d at 146–47 (D.D.C. 2011) (finding BOP cannot meet requirement by "'merely point[ing] to its mission' as blanket reference to the agency's law enforcement duties" or by restating its functions "such as making arrests, executing searches on inmates and visitors to its institutions, and seizing evidence."); *Pinson*, 236 F. Supp. 3d at 366. Likewise, no per se rule exists designating records maintained by the Special Investigative Services office ("SIS") as compiled for law enforcement purposes on the basis that they were created as part of BOP's mission to protect inmates, staff, and the community. *See Pinson v. DOJ*,

10

313 F. Supp. 3d 88, 113–14 (D.D.C. 2018).[8] BOP has been directed to release its records under FOIA on numerous occasions. *See, e.g.*, *Davis v. D.H.S.*, No. 11-CV-203 (ARR)(VMS), 2013 WL 3288418, at *13–14 (E.D.N.Y. June 27, 2013) (directing BOP to release videos of prisoner on prisoner assault and videos of cell extraction inside Metropolitan Detention Center); *Benavides*, 774 F. Supp. 2d at 146–47 (directing BOP to release computer system records which track, monitor, and record prisoner calls); *Pinson*, 313 F. Supp. 3d at 118–19 (directing BOP to release "documents associated with a statute-based programming assignment used to manage Pinson").

Nor do the cases Defendants cite as supporting their position here compel or even suggest a finding that the involuntary treatment records at issue are exempt from disclosure. *See* Defs' Mem. 13 (citing *Mingo v. DOJ*, 793 F. Supp. 2d 447, 454 (D.D.C. 2011) (rejecting pro se prisoner's FOIA request of SIS videos and medical records pertaining to an altercation between fifty prisoners)). Defendants' claim that *Zander v. DOJ* is "directly on point" (Defs' Mem. 13) on the issue of "law enforcement purposes" is perplexing because the *Zander* court never addressed that issue. 885 F. Supp. 2d 1, 7 (D.D.C. 2012), *on reconsideration in part* (Oct. 31, 2012).

Deference to the agency does not mean all information about BOP procedures meets the Exemption 7 "compiled for law enforcement purposes" threshold. *See Human Rights Watch*, 2015 WL 5459713, at *5 ("This broader, commonsense understanding of 'law enforcement purposes' need not and does not embrace all BOP records….").

### B. The Involuntary Medical Treatment Videos Do Not Disclose Techniques and Procedures for Law Enforcement Investigations

Even if Defendants were able to show that the requested documents were compiled for law enforcement purposes, they would not be able to meet Exemption 7(E)'s second requirement, that

---

[8] Defendants' citation to *Pinson* to support their argument that their declarations adequately meet their burden is a quote to the agency's declarant in *Pinson*, rather than to the court's finding. Defs' Mem. at 22–23, citing *Pinson*, 313 F. Supp. 3d at 117–18.

the withheld records disclose "techniques and procedures for law enforcement investigations or prosecution." This requirement is defined by the Second Circuit as "how law enforcement officials go about investigating a crime." *See Allard K. Lowenstein Intern. Human Rights Project v. D.H.S.*, 626 F.3d 678, 682 (2d Cir. 2010). Defendants do not, and cannot, claim, that involuntary medical treatments—force-feeding and intravenous rehydration—fall within this definition. By Defendants' own admission, BOP's stated objectives of involuntary treatment in its Program Statement on hunger strikes are: (a) monitoring the health and welfare of inmates on hunger strike; (b) regularly offering food and beverages; (c) administering treatment when an inmate's life or health is threatened; and (d) properly reviewing, documenting, and reporting every incident of an inmate on hunger strike. Phelps Decl., Ex. A. The BOP's own stated intent here does not relate to investigating crime or an investigation of any kind.

Additionally, Defendants fail to explain which portions of which videos depict the techniques and procedures claimed in Defendants' brief. Defs' Mem. 21–22. The videos Ms. Stahl seeks depict multiple events, actions by officers, and combinations of officers participating in the events: a force-feeding and an involuntary rehydration, Mr. Salameh voluntarily being restrained for routine movement within the prison, officers entering Mr. Salameh's cell (who is physically too weak to move to the cell door) to restrain him for routine transportation, and Mr. Salameh being escorted through the Health Services Department. *Supra* Background 4–6; Salameh Decl. ¶ 8.

Some of these events and portions of the videos do not depict any of what Defendants claim to be investigatory techniques and procedures. The Phelps Declaration notably lacks a detailed description of what occurs in the videos during the involuntary medical treatments. Phelps Decl. ¶¶ 33, 47. Missing from Defendants' description of the medical procedures is whether the team

are touching or around Mr. Salameh during the procedure or whether any investigatory techniques and procedures are depicted during these parts of the videos. Mr. Salameh's recollection is that they were not touching him. Salameh Decl. ¶¶ 16, 22. Thus, most, if not all, of what the agency lists as at risk of disclosure (*e.g.*, protective gear and security equipment, locations where equipment is stored, manner in which inmates are restrained, duties/responsibilities of each staff member, strategies for conflict avoidance, layout of Florence ADX) are not apparently depicted in the parts of the videos showing involuntary medical treatments.

Furthermore, if, as Mr. Salameh states, he was not forcibly extracted from his cell, but rather escorted voluntarily, these portions of the video also do not depict any such investigatory law enforcement techniques or procedures. As Salameh states, he was physically too weak to resist and acquiesced entirely to the placement of the restraints when he was escorted for the involuntary rehydration and he voluntarily exited his cell for the involuntary feeding. Salameh Decl. ¶¶ 13, 19.

That a BOP cell extraction video was not claimed exempt and ordered released in *Davis v. D.H.S.*, 2013 WL 3288418, at *13–14 (E.D.N.Y. June 27, 2013), and that a calculated use of force photo and descriptions were permitted to be withheld in *Pinson v. DOJ*, 313 F. Supp. at 117, indicate that certain use of force related images in prisons may at times be claimed and found to be exempt under 7(E). However, here, where the video requested depicts a prisoner submitting to involuntary medical treatment, it is clear that there are no investigatory techniques and procedures that would be revealed by releasing all or some of the video.

C.      **The Involuntary Medical Treatment Videos Are Known to the Public**

Defendants have not met their burden to show that the records reveal techniques and procedures that are generally "not known to the public." *Schwartz v. D.E.A.*, No. 13-CV-5004 (CBA)(RML), 2016 WL 154089, at *10–11 (E.D.N.Y. Jan. 12, 2016), *aff'd*, 692 F. App'x 73 (2d

Cir. 2017; *Am. Immigration Council v. D.H.S.*, 950 F. Supp. 2d at 247 (explaining an agency's evidentiary burden includes an exploration of why the technique or procedure is not generally known to the public). Public knowledge of BOP's force-feeding procedures was established in *Rosenberg v. DOD*. 342 F. Supp. 3d 62, 93 (D.D.C. 2018). In distinguishing the Joint Task Force Guantanamo ("JFT-GTMO") force-feeding procedures from those of the BOP, the court found the fact that BOP's force-feeding procedures *were* generally known to the public, while JFT-GTMO's were not, was a critical difference and key to its decision. *Id.* at 95.

BOP's force-feeding procedures are in the public domain in many ways, several of which are listed in the Phelps Declaration. Phelps Decl. ¶ 56. First, they are described in the BOP's own program statements, which are publicly available on the BOP's website. Phelps Decl., Ex. A and B; *supra* Background 5. Next, approximately 2,600 pages of Mr. Salameh's medical records documenting instances of force-feeding, details of the procedures, and what and how the treatment was provided (including records from November 4, 2015 and November 11, 2015) were already released to Ms. Stahl. Stahl Decl. ¶ 17–19, Ex. C. Additionally, BOP's force-feeding procedures are widely depicted in the media, including, but certainly not limited to, Ms. Stahl's article based on her conversations with Mr. Salameh. Stahl Decl. ¶¶ 5–8, 10–12. These depictions are based on first-hand accounts of the force-feeding procedures given by prisoners to journalists and others. *See id.* ¶¶ 10–12.

Physical aspects of Florence ADX are also known to the public. Indeed, the 60 Minutes video which initiated Ms. Stahl's reporting on the facility shows videos and photos of guards, prisoners, restraints on prisoners, cell doors, keys, hallways, prisoners and guards travelling throughout the facility, and cells in the prison.[9] *Id.* ¶ 5–6. Pictures inside the facility have been

---

[9] *Supermax: A clean version of hell*, 60 Minutes on CBS News (most recent air date June 23, 2019), https://cbsn.ws/2OATmAq.

released to the public via litigation, some of which also appear in Ms. Stahl's article. Stahl Decl. ¶ 13. These images and descriptions are available elsewhere online, including in the District of Columbia Corrections Information Council Inspection Report on Florence ADX, http://bit.ly/39gFhQr. Depictions of the protective gear referenced in the Hunger Strike and Use of Force policies are publicly available on OSHA's website. *See supra* Background 4; 29 C.F.R. 1910, http://bit.ly/38kAGws. While Defendants suggest that releasing videos that depict such things as officers' protective gear, the manner in which restraints are used, and the type of restraints used would reveal "law enforcement techniques and procedures," (Defs' Mem. 21–22) they fail to meet their burden to show that prisoners at Florence ADX are not already aware of these conditions. While the videos may depict images that are generally unknown, such as the location where keys are secured, Defendants fail to meet their burden to show that this material is not segregable. *See infra* Part IV.

Because BOP's hunger strike policy is already in the public domain, Defendants attempt to argue that "even commonly known procedures" may be protected under Exemption 7(E). Defs' Mem. 21 (citing *Vazquez v. DOJ*, 887 F. Supp. 2d 114, 116–17 (D.D.C. 2012). However, the Second Circuit's rule that Exemption 7(E) requires law enforcement techniques and procedures to be generally unknown to the public remains in effect. *See Knight First Amendment Inst. at Columbia Univ. v. D.H.S.*, 407 F. Supp. 3d 334, 352 (S.D.N.Y. 2019) (citing *Doherty v. DOJ*, 775 F.2d 49, 52 n.4 (2d Cir. 1985)); *see also ACLU v. D.H.S.*, 243 F. Supp. 3d 393, 402 (S.D.N.Y. 2017) (rejecting "even commonly known procedures" formulation put forth here by Defendants).

## II.    THE DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING ALL VIDEOS UNDER EXEMPTION 7(F)

In order to withhold information under Exemption (7)(F), Defendants must show that the videos were "compiled for law enforcement purposes" and could "reasonably be expected to

endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Defendants have failed to meet their threshold burden of showing that the withheld videos were compiled for law enforcement purposes. *See supra* Part I.A. Furthermore, Defendants' declarants do not present facts sufficient to meet the other two parts of the test.

### A.   Defendants Cannot Demonstrate with Sufficient Specificity the Harm that They Claim Could Result from the Disclosure of the Videos

Exemption 7 only protects from disclosure records that are "compiled for law enforcement purposes" to the extent that such disclosure would cause an "enumerated harm." *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d at 145 (citing *F.B.I. v. Abramson*, 456 U.S. 615, 622 (1982)). In assessing enumerated harm, courts only defer to an agency's assessment of danger "within reason." *Pinson v. DOJ*, 313 F. Supp. at 119–20 (finding DOJ not entitled to withhold BOP documents under Exemption 7(F)). The agency must make a showing of sufficient facts to support its assessment of danger. *Sluss v. DOJ*, No. 17-cv-00064, 2019 WL 2493447, at *7 (D.D.C. June 14, 2019). Indeed, the court's deferential standard of review is not "vacuous," but requires a "nexus between disclosure and possible harm. . . ." *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999); *Albuquerque Pub. Co. v. DOJ*, 726 F. Supp. 851, 858 (D.D.C. 1989). To meet the "reasonably be expected" threshold, descriptions of the harm or danger likely to occur cannot be vague and conclusory. 5 U.S.C. § 552(b)(7)(F); *Sanchez-Alaniz v. Fed. Bureau of Prisons*, 85 F. Supp. 3d 208, 211 (D.D.C. 2015). Unsupported speculation about the possible harm from disclosure cannot serve as justification for withholding under 7(F). *Long v. DOJ*, 450 F. Supp. 2d 42, 80 (D.D.C. 2006), *amended on other grounds*, 479 F. Supp. 2d 23 (D.D.C. 2007).

To establish a reasonable expectation of harm or danger that could occur if the videos are disclosed, Defendants only offer that "disclosure. . . could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate

against staff involved in calculated uses of force." Fenstermaker Decl., Ex. E. This fails to meet the threshold standard in the statute because it lacks any real nexus between disclosure of the videos and the stated harm of retaliation, instead utilizing vague assertions that reveal nothing about how such retaliation might actually occur. *See Amuso v. DOJ*, 600 F. Supp. 2d 78, 101 (D.D.C. 2009); *Petrucelli v. DOJ*, 51 F. Supp. 3d 142, 172 (D.D.C. 2014). Whereas in *Garcia v. DOJ, Office of Info. & Privacy* redactions and withholding were proper because the plaintiff had a consistent "history of retaliation against individuals who ha[d] provided information about him to law enforcement agencies," Defendants here do nothing to explain how retaliation would occur, or why they believe it is likely to occur with disclosure of the videos. 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002).

Defendants here provide no evidence that retaliation against staff is likely to result from the release of these videos. Notably, Mr. Salameh was force-fed more than 200 times and there have been thousands of other incidences of force-feeding of other people at Florence ADX. *See* Stahl Decl. ¶¶ 7, 11–12. Presumably, other prisoners knew the identities of at least some of the staff who participated in their force-feedings, as Mr. Salameh did, but Defendants do not point to a single instance where anyone attempted to harm or retaliate against any of these individuals. *See* Salameh Decl. ¶¶ 13–23; s*ee generally* Phelps Decl. and Fenstermaker Decl. Defendants provide no evidence or explanation as to why that would change with disclosure of the videos. Such vague and conclusory assertions of danger are insufficient for withholding. *Halpern v. F.B.I.*, 181 F.3d at 293.

Furthermore, Mr. Salameh successfully completed the Florence ADX Step-Down program and has since been moved to a general population setting in a prison in Kentucky. Salameh Decl. ¶ 3. Disclosure of the videos does not establish a reasonable expectation of harm, since a "vast

geographical distance" separates Mr. Salameh from anyone who conceivably might be in danger of retaliation if the videos were disclosed. *Ruston v. DOJ*, No. 06-0224 (RMU), 2007 WL 809698, at *6 (D.D.C. Mar. 15, 2007) (finding that geographical distance between prisoner plaintiff and BOP doctor mitigated any palpable risk of harm).

In a further attempt to explain how retaliation might occur, Ms. Fenstermaker states that "[d]isclosure of this information could subject these individuals to retaliation … at the direction of inmate Salameh, …or indeed *anyone else who objects to the tactics depicted in the videos*." Fenstermaker Decl. ¶ 50 (emphasis added). This claim is so vague that it states neither the reasonable likelihood of harm nor, indeed, the harm itself. Because Defendants' claim about who might be at risk of retaliation is so attenuated and lacks "reasonably specific detail," it also fails to establish that the videos "logically fall[] within the claimed exemption." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).

Finally, Defendants incorrectly analogize this case with *Zander*, where a cell extraction video was withheld because "[r]emoving prisoners from their cells presents clear dangers to the law enforcement officers who are charged with the task." *Zander v. DOJ*, 885 F. Supp. 2d 1, 7 (2012); *see also* Defs' Mem. 19–20. There, Zander, a pro se plaintiff, sought videos of his own contentious and violent cell extraction., *Zander v. DOJ*, (No. 10-CV-02000-JDB), Compl. ¶ 17, ECF No. 1. In this case, the videos primarily depict the involuntary medical procedures, entirely different from a forcible and violent cell extraction. When Mr. Salameh was removed from his cell to the medical exam room for the procedures, he did not resist, and there was no violent confrontation. *See supra* Background 5, n.6; *see also supra* Part I.B; Phelps Decl. ¶ 42; Salameh Decl. ¶ 24. The harms associated with such a contentious cell extraction as explained in *Zander* are not present in this case.

**B.    Defendants Cannot Identify "Any Individual" with Sufficient Specificity**

Defendants similarly fail to identify "any individual" whose life or physical safety could be endangered with "reasonable specificity." *ACLU v. DOD*, 543 F.3d 59, 71 (2d Cir. 2008), *vacated on other grounds*, 558 U.S. 1042 (2009), (providing in-depth analysis of Supreme Court's interpretation of the word 'any' across federal statutes and analyzing its use in FOIA to find it to require agencies to identify individuals to whom harm would reasonably be expected to come from disclosure); *see also New York Times Co. v. U.S. Secret Serv*., No. 17 Civ. 1885 (PAC), 2018 WL 722420, at *9 (S.D.N.Y. Feb. 5, 2018). Contrary to Defendants' assertion that "any individual" is a broad designation that literally refers to anyone (Defs' Mem. 17), the term does not actually refer to anyone that could possibly be harmed by disclosure of the contested records, but rather, to a "small and specific" group. *ACLU*, 543 F.3d at 68, 71. "Any individual" cannot refer simply to "individuals identified solely as members of a group so large that risks which are clearly speculative for any particular individuals become reasonably foreseeable for the group." *Id.* at 67. To withhold under 7(F), "an agency must identify at least one individual with reasonable specificity." *Id*. at 71.

Here, Defendants identify the overly broad class of "BOP staff or other third parties involved" as people whose life could be endangered by release of the videos. *See Vaughn* index, Fenstermaker Decl., Ex. E, at 5. They do not identify the number of individuals included in this group, nor do they attempt to identify them by rank or name. By stating in their *Vaughn* that incarcerated people may seek to retaliate against "staff involved in calculated uses of force" more broadly, Defendants move even further away from describing the individual with "reasonable specificity." *See ACLU*, 543 F.3d at 71 (2d Cir. 2008). Defendants attempt to stitch together a showing of reasonable expectation of endangerment "by aggregating miniscule and speculative

individual risks over a vast group of individuals." *Id.*

Furthermore, Defendants make it impossible for the court to determine which individuals are likely to be harmed because they use different designations to describe "any individual." They vacillate between defining "any individual" as staff in the withheld videos, "staff who willingly participate in a calculated use of force," or BOP staff in general. Defs' Mem. 18; Phelps Decl. ¶¶ 54, 55. The staff in the videos have already been named by Mr. Salameh, and thus any danger to them from disclosure is mitigated. Salameh Decl. ¶¶ 13–23. "[S]taff who willingly participate in a calculated use of force" and BOP staff in general are such large groups as to be insufficiently vague. *ACLU*, 543 F.3d at 71.

## III.    THE DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING ALL VIDEOS UNDER EXEMPTIONS 6 AND 7(C)

Defendants have not made an adequate showing under the privacy protections of Exemptions 6 and 7(C) that they are entitled to withhold all thirteen videos in their entirety. These two exemptions are closely related. Exemption 6 permits withholding of "personnel and medical files and similar files," disclosure of which would create an "unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption "creates a heavy burden" for the agency as "the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (internal quotation marks omitted). Exemption 7(C) allows agencies to withhold law enforcement records, the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C). For the exemptions to apply, Defendants must show that the privacy interests at stake outweigh the substantial interest in public disclosure.

As to both Exemptions, Defendants fail to meet the requisite threshold requirements. Under Exemption 7(C), they fail to show that the videos were compiled for law enforcement purposes.

*See supra* Part I.A. For Exemption 6, they fail to show that the videos are personnel, medical, or similar files with respect to the people whose privacy interests are at stake.[10] "The inquiry in this jurisdiction is 'whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file.'" *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 745 (S.D.N.Y. 2011), *amended on other grounds* (Aug. 8, 2011) (quoting *Wood v. F.B.I.*, 432 F.3d 78, 86 (2d Cir. 2005)). "It is not the case that any mention of a federal employee's name may be withheld." *Id.* at 746. Here, Defendants make no showing that the videos are similar to personnel files.

Assuming arguendo that Defendants meet the exemptions' threshold requirements, the Court must then determine whether disclosure of the disputed records would compromise a "substantial privacy interest," and balance that risk against the public's interest in disclosure—the right to know what the government is doing and how agencies are performing their statutory duties. *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015). To determine the public's interest, the court asks whether disclosure would further the public's understanding of operations or activities of the government. *See Pinson*, 313 F. Supp. 3d at 111 (citing *Bartholdi Cable Co. v. F.C.C.*, 114 F.3d 274, 282 (D.C. Cir. 1997)). To determine the risk of invasion of personal privacy, the court asks whether disclosure of agency employees' identifying information could cause harassment and embarrassment. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991).

Here, the privacy interest is *de minimis*. The agency's declaration identifies instances in the videos where staff members state their names and their images can be seen as the reasons personal privacy is at risk. Phelps Decl. ¶ 54. However, by Defendants' own admission, the names are stated and images portrayed in discrete moments in the videos, not throughout all portions of

---

[10] While the videos are certainly part of Mr. Salameh's medical records, no party suggests that his privacy issues are at stake in this litigation.

all videos. Phelps Decl. ¶¶ 24–50. In many paragraphs of the Phelps declaration, it is not stated that images or faces can be seen, only that protective gear or equipment is visible. Phelps Decl. ¶¶ 29–33, 40, 43, 44, 46, 47. Notably, paragraphs 33 and 47, describing the moments of the administration of the involuntary medical treatments, do not state that staff images or identifying information can be seen. Phelps Decl. ¶¶ 33, 47. Finally, even where staff are shown, the declaration does not establish identifying information is shown such that it would cause harassment and embarrassment. *U.S. Dep't of State*, 502 U.S. at 176 n.12. *See supra* Part II.A (arguing that Defendants provide no evidence that harm to BOP staff would result from release).

The public interest in disclosure outweighs any privacy interest. There is a substantial interest in informing and educating the public on "the operations and activities" at Florence ADX and other BOP facilities. *See ACLU v. DOD*, 389 F. Supp. 2d 547, 573 (S.D.N.Y. 2005) (finding public interest in "spark[ing] debate about the causes…that led to the breakdown of command discipline at Abu Ghraib prison and, possibly, by extension, to other prisons…" was the very purpose that FOIA was intended for). Transparency over BOP operations and activities, such as the hunger striking and calculated use of force procedures, is of paramount importance to public discourse and the healthy functioning of democracy. Indeed, as made clear from media reporting on both this prison and prison hunger strikes, the public has demonstrated a significant interest in the issues at stake here.[11]

---

[11] Mitch Smith, *Prison Strike Organizers Aim to Improve Conditions and Pay*, N.Y. Times (Aug. 26, 2018), https://nyti.ms/2HcX4fj; Daniel A. Gross, *An Inside Account of the National Prisoners' Strike*, New Yorker (Sept. 6, 2018), http://bit.ly/377n5Hz; Lindsey Bever & Cleve R. Wootson Jr., *Inmates Across the U.S. Are Staging a Prison Strike Over 'Modern-Day Slavery,*' Wash. Post (Aug. 21, 2018), https://wapo.st/2StqwDl; Vauhini Vara, *The Viral Success of a Strike No One Can See*, Atlantic (Aug. 30, 2018), http://bit.ly/2tFmEGL; Ed Pilkington, *Major Prison Strike Spreads Across US and Canada as Inmates Refuse Food*, Guardian (Aug. 23, 2018), http://bit.ly/31El84m; Laignee Barron, *Here's Why Inmates in the U.S. Prison System Have Launched a Nationwide Strike*, Time (Aug. 22, 2018), http://bit.ly/377WQ3F; Tess Bonn, *Journalist calls for more transparency around prison extreme isolation practices*, The Hill (July 10, 2019), http://bit.ly/2OFCzMz; Mark Binelli, *Inside America's Toughest Federal Prisons*, N.Y. Times (Mar. 26, 2015), https://nyti ms/39v9PhN; Edmund DeMarche, *ICE Officials force-feed 6 immigrants on hunger strike at Texas detention center*, Fox News (Jan. 31, 2019), https://fxn.ws/2Uywjdn.

Additionally, Defendants' reasoning that the privacy of BOP staff outweighs the public interest because information about force-feeding is already in the public domain finds no support in the law. *See* Phelps Decl. ¶ 56; *ACLU v. DOJ*, 655 F.3d 1, 14–15 (D.C. Cir. 2011) (rejecting this reasoning by the government as a "Catch-22 argument. . .The fact that the public already has some information does not mean that more will not advance the public interest."). The videotape records at issue here are uniquely important because images "present a different level of detail…and are the best evidence that the public could have as to what occurred at a particular time, better than testimony, which can be self-serving, better than summaries, which can be misleading, and better even than a full description no matter how complete that description might be." *ACLU*, 389 F. Supp. 2d at 573. This is especially true here, where the agency's declarants who describe the contents of the video were not present for involuntary treatments and can only offer, potentially self-serving, second-hand representations. Descriptions of the procedures in BOP Program Statements, in media articles and news segments, though detailed and descriptive, have less probative value to the public than the videotapes. *See id.* (finding the public interest in the original photos of Abu Ghraib detainees was substantial because of their probative value).

## IV.    THE DEFENDANTS FAIL TO MEET THEIR BURDEN TO SHOW NO MATERIAL WITHIN THE VIDEOS IS SEGREGABLE

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt. . . " 5 U.S.C. § 552(b). It is the agency's affirmative burden to explain why any portion of the withheld materials is not segregable. *Schwartz v. D.E.A.*, 13-CV-5004 (CBA) (ST), 2019 WL 1299192, at *56 (E.D.N.Y. Mar. 1, 2019). Defendants have wholly failed to meet its burden, neither explaining what portions might be segregable nor providing a detailed explanation of why they have withheld the videos in full. They simply perform no segregability analysis whatsoever.

To withhold the entirety of a record, the agency *must* show that it cannot segregate exempt material from non-exempt, and the agency must disclose as much as possible. *Kimberlin v. DOJ*, 139 F.3d 944, 949–50 (D.C. Cir. 1998). Furthermore, it is long established that "the focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Videos are treated similarly. *Schwartz*, 2019 WL 1299192, at *5 (noting DEA failed to address specifically whether there were reasonably segregable portions of a video, as required under FOIA).

Far from explaining why segregability is not possible, Defendants say no more than "every effort was made to provide Stahl with all reasonably segregable nonexempt information contained in the responsive records." Defs' Mem. 8. Their *Vaughn* index is similarly conclusory, stating nothing more than that the "images/depiction of the BOP staff are not segregable." Fenstermaker Decl., Ex. E, at 5. This is insufficient to justify withholding the videos in full, as the reasoning behind the justification must not be vague, conclusory statements. *Mead Data Cent., Inc.*, at 261; *see Schwartz*, 2019 WL 1299192, at *6 (remanding to district court on segregability where agency provided no supporting justification for its conclusory statements). Indeed, a district court must make "specific findings" on segregability and may not rely solely on conclusory statements by the agency. *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008); *see also ACLU v. DOJ*, 229 F. Supp. 3d 259, 266 (S.D.N.Y. 2017) ("before approving the application of a FOIA exemption, the district court must make specific findings of segregability. . . ."). Courts require agencies to "differentiate among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes." *F.B.I. v. Abramson*, 456 U.S. at 626.

Additionally, Defendants' own communications suggest that they did not review the

records for segregability before summarily withholding the videos in their entirety. In an email between Defendants' declarant, Ms. Fenstermaker, and BOP staff who were tasked with searching for any force-feeding videos of Mr. Salameh, Fenstermaker instructed that they should "[k]eep in mind if there are any videos found, they will be withheld in there [sic] entirety." Declaration of Betsy Ginsberg, Ex. A & B. The agency's failure to review the videos prior to deciding to withhold them in full, combined with their conclusory statements on segregability, make plain that Defendants cannot meet their burden of disclosing "any reasonable segregable" portion of the videos. 5 U.S.C. § 552(b). *Gatore v. D.H.S.*, 177 F. Supp. 3d 46, 52 (D.D.C. 2016) (denying summary judgment where agency's assertion that they conducted a "line-by-line examination" of each document was undermined by their own blanket policy not to release any portion of an assessment, regardless of its contents).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Summary Judgment and should enter summary judgment in favor of Plaintiff Stahl as to the government's improper withholding of the thirteen videos, in whole and in part, from plaintiff.


Dated: February 10, 2020

/s/ Betsy Ginsberg
BETSY GINSBERG
Director, Cardozo Civil Rights Clinic

KHARIS LUND
CIERA FOREMAN
Legal Interns
Cardozo Civil Rights Clinic
55 5th Ave., 11th Floor
New York, NY 10003
(212) 790-0871
Betsy.ginsberg@yu.edu

*Attorneys for Plaintiffs*
