UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AVIVA STAHL,

    Plaintiff,

v.

No. 19-CV-4142 (BMC)

FEDERAL BUREAU OF PRISONS, and
DEPARTMENT OF JUSTICE,

    Defendants.

#### SUPPLEMENTAL DECLARATION OF ERIKA FENSTERMAKER

I, Erika Fenstermaker, do hereby declare and state as follows:

1. On December 19, 2019, I executed a declaration in the above-captioned proceeding addressing Plaintiff's allegations that the Bureau of Prisons ["BOP"] improperly withheld thirteen (13) videotapes responsive to her FOIA request concerning federal inmate Mohammad Salameh, Reg. No. 34338-054.

2. I supplement my previous declaration to respond to a number of incorrect statements the Plaintiff made in responding to the Government's motion for summary judgment. I make the statements herein based on my personal knowledge, on my review of the official files and records of BOP to which I have authorized access, and on information acquired by me through the performance of my official duties.

3. First, Plaintiff argues that the videotapes at issue should be edited to allow for segregable, non-exempt information within them to be released. However, as discussed in my previous declaration, the BOP does not have any technical or technological capacity to blur or obscure images, black out information, crop videos, or otherwise edit exempt information from video files.

1

4.      To edit a recorded videotape in any manner, specialized video editing technology would be needed, as well as specialized training for using such technology. As an agency, BOP has no need for this type of technology in the ordinary course of its business and no need for personnel specially trained to use such technology. Nor is video editing a function that the BOP routinely engages in or to my knowledge has done in the past. As such, BOP simply does not have the ability to segregate any portions of the videotapes for release.

5.      Further, as I previously explained, even if any of the information in the videos were non-exempt, it is inextricably intertwined with exempt information, and therefore could not reasonably be segregated even if BOP had the technical capacity to do so. Although different portions of the videos contained different levels or categories of exempt information, each second of the video that I reviewed and assessed for release contained exempt information that raised privacy concerns or concerns regarding the release of law enforcement procedures and techniques. Accordingly, each videotape was withheld in its entirety pursuant to the FOIA exemptions cited in my previous declaration.

6.      Second, Plaintiff asserts that I failed to review the videos prior to deciding to withhold them in full. For support, Plaintiff cites to two emails I sent on August 19, 2019, in which I asked BOP personnel to search for additional videos regarding inmate Salameh corresponding to the time periods requested in the FOIA request. In one of the emails, I stated, "If you find any videos can you please forward them the [sic] me. Keep in mind if there are any videos found, they will be withheld in there [sic] entirety." *See* Declaration of Betsy Ginsberg, Exh. A, submitted with Plaintiff's response. Plaintiff argues that this statement means that I determined the exempt status of the videos before I even reviewed them. This is incorrect.

2

7.    By the time I sent these emails on August 19, 2019, I had already received and reviewed the six (6) videotapes related to the involuntary medical treatment (intravenous hydration) of inmate Salameh on November 4, 2015. Plaintiff had been informed, via letter dated September 24, 2018, of the decision to withhold those videos in full, as well as of the exemptions supporting the withholding of the videotapes. *See* Exh. D to my initial declaration. Prior to withholding those six (6) videos, I carefully viewed each of them and assessed all applicable exemptions. After my careful review of each video, I determined that there were no portions of any of the videotapes that could be segregated and released to Plaintiff, and thus, withheld them in full. *Id.*

8.    In August 2019, after the instant litigation had been filed, I determined, in consultation with agency counsel, that a follow-up search for records relevant to Plaintiff's FOIA request was necessary. When I stated in the aforementioned emails that any responsive videos would be withheld in their entirety, I did so based on my reasonable belief that the contents of any responsive videos would most likely be substantially similar to the videos I had previously reviewed related to the November 4, 2015, involuntary treatment of inmate Salameh. Because I had previously reviewed those six (6) videos in detail, I felt it reasonable to predict that any additional videos would be withheld pursuant to the same exemptions.

9.    In addition, having been employed as a Government Information Specialist for the past five (5) years, and having been previously employed in a BOP facility where use of force videos are routinely videotaped, I am well-versed in the content of calculated use of force videos, including the sensitive privacy and law enforcement information contained in them. As such, I was reasonably certain that any additional use of force videos pertaining to the

3

involuntary treatment of inmate Salameh would be subject to the same FOIA exemptions that generally apply to such videos, including the previous six (6) videos that were withheld in response to Plaintiff's FOIA request. Although I felt confident making this prediction, I was not pre-judging any determination and knew that I would carefully review any additional videos that were located and assess them for applicable exemptions before making any formal determination.

10.     No additional videos were located in response to my August 19, 2019, email requests.

11.     However, an additional seven (7) responsive videos were subsequently located in files maintained at Florence ADX, which pertained to the involuntary treatment of inmate Salameh on November 11, 2015. Once I received those videos, I carefully viewed each of them. In fact, I viewed them multiple times to ensure my assessment of applicable exemptions was accurate. As stated, I did not prejudge the FOIA status of any of these videos, nor did I predetermine that they were exempt from release in this instance. Instead, I reviewed each video carefully and conducted a thorough analysis for applicable exemptions. As with the previous six (6) videotapes I reviewed, I determined that there were no portions of any of the additional seven (7) videotapes that could be segregated and released to Plaintiff, and thus, withheld them in full pursuant to the statutory exemptions cited in my previous declaration.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20 day of February 2020.

Erika Fenstermaker
Erika Fenstermaker
FOIA/PA Technician
North Central Regional Office
Kansas City, Kansas

5