UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVIVA STAHL, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF PRISONS, and DEPARTMENT OF JUSTICE, <br><br> Defendants. | No. 19-cv-4142 (BMC) <br><br> (Cogan, J.) |

# REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

BETSY GINSBERG
Director
Cardozo Civil Rights Clinic

KHARIS LUND
CIERA FOREMAN
Legal Interns
Cardozo Civil Rights Clinic
55 5th Ave., 11th Floor
New York, NY 10003
(212) 790-0871

*Attorneys for Plaintiff*

**Dated: March 9, 2020**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION ................................................................................................................ 1

I. DEFENDANTS DO NOT MEET THEIR THRESHOLD BURDEN OF SHOWING THE VIDEOS WERE COMPILED FOR LAW ENFORCEMENT PURPOSES. ...................... 1

II. DEFENDANTS FAIL TO SHOW THAT THE VIDEOS DEPICT LAW ENFORCEMENT TECHNIQUES AND PROCEDURES UNKNOWN TO THE PUBLIC AS REQUIRED BY EXEMPTION 7(E). ........................................................................ 3

III. DEFENDANTS CANNOT SHOW HOW HARM TO ANY INDIVIDUAL COULD REASONBLY BE EXPECTED AS REQUIRED BY EXEMPTION 7(F). ...................... 5

IV. DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING ALL VIDEOS UNDER EXEMPTIONS 6 AND 7(C). ............................................................. 6

V. DEFENDANTS FAIL TO MEET THEIR BURDEN WITH REGARD TO SEGREGABILITY ........................................................................................................ 8

# TABLE OF AUTHORITIES

*100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115 (D.D.C. 2017) .................................................... 8

*ACLU v. .DOJ*, No. 12-CV-7412 WHP, 2014 WL 956303 (S.D.N.Y. Mar. 11, 2014) ................. 4

*ACLU v. DOD*, 543 F.3d 59 (2d Cir. 2008). ................................................................................. 5

*Allard K. Lowenstein Intern. Human Rights Project v. D.H.S.*,
626 F.3d 678 (2d Cir. 2010) ....................................................................................................... 3

*Barnard v. DHS*, 598 F. Supp. 2d 1 (D.D.C. 2009) ...................................................................... 4

*Bartko v. DOJ*, 898 F.3d 51 (D.C. Cir. 2018) ............................................................................... 1

*Benavides v. BOP*, 774 F. Supp. 141 (D.D.C. 2011) .................................................................... 2

*Citizens for Responsibility & Ethics in Washington v. DOJ*,
955 F. Supp. 2d 4 (D.D.C. 2013) ............................................................................................. 10

*Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168 (2d Cir. 2014) ...................................... 7

*Davis v. D.H.S..*, No. 11-CV-203 (ARR) (VMS),
2013 WL 3288418 (E.D.N.Y. June 27, 2013) ........................................................................... 2

*Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172 (D.C. Cir. 2002) ......................... 1

*Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225 (2012) ............................................................. 8

*Kubik v. BOP*, No. 10-6078-TC, 2011 WL 2619538 (D. Or. July 1, 2011) ................................ 10

*Milhouse v. Jordan*, No. 1:CV-09-01365, 2011 WL 662635 (M.D. Pa. Feb. 14, 2011) .............. 10

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ............................................... 7

*Pinson*, 313 F. Supp. 3d 88 (D.D.C. 2018) ................................................................................... 2

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) .......................................................................... 2

*Prison Legal News v. Executive Office for U.S. Attorneys*,
No. CIV.A.08CV01055MSKKL, 2009 WL 2982841 (D. Colo. Sept. 16, 2009) .................... 10

*Rural Housing Alliance v. U.S. Dep't of Agriculture*, 498 F.2d 73 (D.C. Cir. 1974) .................... 1

*Schwartz v. D.E.A.*, No. 13-CV-5004(CBA)(RML),
2016 WL 154089 (E.D.N.Y. Jan. 12, 2016), *aff'd*, 692 F. App'x 73 (2d Cir. 2017) .................... 4

*Tax Analysts v. IRS,* 294 F.3d 71 (D.C. Cir. 2002) .......................................................................... 2

*Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) .................................... 8

*Womack v. Smith*, No. 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012) .................... 9

*Zander v. DOJ*, 885 F. Supp. 2d 1 (D.D.C. 2012) ...................................................................... 2, 6

Case 1:19-cv-04142-BMC   Document 23   Filed 03/09/20   Page 4 of 15 PageID #: 405

*Tax Analysts v. IRS,* 294 F.3d 71 (D.C. Cir. 2002) .......................................................................... 2

*Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) .................................... 8

*Womack v. Smith*, No. 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012) .................... 9

*Zander v. DOJ*, 885 F. Supp. 2d 1 (D.D.C. 2012) ...................................................................... 2, 6

Case 1:19-cv-04142-BMC   Document 23   Filed 03/09/20   Page 4 of 15 PageID #: 405

**INTRODUCTION**

Defendants cannot meet their burden to show that FOIA exempts from disclosure all parts of the 13 videos depicting BOP's intravenous hydration and nasogastric tube feeding. Further, they fail to take seriously their duty to segregate and produce nonexempt material, claiming both that "every second" of each video is exempt and that they have no capacity to edit the videos, despite, as Plaintiff shows, they can and have edited BOP videos in other cases.

**I.   DEFENDANTS DO NOT MEET THEIR THRESHOLD BURDEN OF SHOWING THE VIDEOS WERE COMPILED FOR LAW ENFORCEMENT PURPOSES.**

Trying to meet their burden to show that the videos were compiled for law enforcement purposes, Defendants now pivot from a per se argument uniformly rejected by courts, to a new theory that suggests all internal monitoring documents, like the videos here, are compiled for law enforcement purposes because they *could* become evidence in the event that a criminal or internal investigation were to occur. Defs.' Reply 6. Defendants claim that three purposes of these videos, providing potential evidence of a prisoner's wrongful act, of a staff member's wrongful act, and "protecting inmates, staff and the community at large," create the required nexus. *Id.*

Defendants' new argument that the videos meet the threshold because they could be potential evidence if someone committed a wrongful act is ungrounded in law. The mere possibility of a legal violation fails the rational nexus test's requirement that records focus on specific illegal acts because "'[a]ny internal auditing or monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges . . . .'" *See Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Rural Housing Alliance v. U.S. Dep't of Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)); *see also Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002) (distinguishing files related to oversight of employees' performance and files related to investigations of specific illegal acts).

1

Defendants' last basis for a rational nexus—protecting inmates, staff, and the community—is so vague and broad that any record compiled by BOP would meet the threshold—an outcome rejected by the courts. *See e.g.*, *Benavides v. BOP*, 774 F. Supp. 2d 141, 146–47 (D.D.C. 2011) (noting D.C. Circuit rejected per se rule that all BOP records meet the threshold requirement). In the limited instances where courts have found that records met the burden under this rationale, they did not use the *Pratt* rational nexus test. *See Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982). Rather, BOP's mission to protect was evoked to establish that the records were "akin to 'guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation'"—an alternative to the *Pratt* test for non-investigatory records.[1] *Pinson v. DOJ*, 313 F. Supp. 3d 88, 114 (D.D.C. 2018) (citing *Tax Analysts v. IRS,* 294 F.3d 71, 78 (D.C. Cir. 2002) (analyzing such records as those pertaining to handling of threats to security and inmate escapes and internal discipline procedures). The court in *Tax Analysts* made plain that this new test, created in light of FOIA's 1986 amendment adding the guidelines element, was intended to exempt records such as "law enforcement manuals." *Tax Analysts,* 294 F.3d at 79 (citing S. REP. NO. 98-221, at 23 (1983)).

Defendants fail to address the multiple instances where similar records, including video of prisoner assault and a cell extraction, and records of monitoring and recording prisoner calls, did not fall under Exemption 7 and were ordered released. *See Davis v. DHS,* 2013 WL 3288418 (E.D.N.Y. June 27, 2013) at *14; *Benavides,* 774 F. Supp. at 147; *Pinson*, 313 F. Supp. 3d at 119.

Defendants' suggestion that Salameh's criminal and institutional record have any bearing on why the videos were created has no basis in law and misstates that record. They argue that

---

[1] Defendants also cite *Zander v. DOJ*, to support this proposition, even though the court did not address the law enforcement purpose issue. 885 F. Supp. 2d 1, *7–8 (D.D.C. 2012). *Mingo* is also not instructive, as that court did not analyze the records under the rational nexus or the *Tax Analysts* test, and the pro se plaintiff provided no argument on the issue. *See* Pl. Mot. Summ. J. 8, *Mingo v. DOJ*, No. 10-cv-01673 (D.D.C. Oct. 28, 2010), ECF No. 6.

2

because Salameh's record shows that he was dangerous, any record compiled while interacting with him would be exempt. Defs.' Reply 9. Their portrayal of his prison record belies the fact that a large majority of it is over 20 years old. *See infra* Part III, discussing Salameh's record. Phelps' statement that Salameh's hunger strikes constituted insubordination is inaccurate, as hunger strikes are not prohibited by BOP, nor according to Phelps, was he ever disciplined for his many hunger strikes.[2] *See* Phelps Supp. Decl., Ex. C. Defendants cite no authority that the behavior of the subject of records has any bearing on whether those records were compiled for law enforcement purposes, especially where the records were compiled as a routine matter of BOP policy.

## II. DEFENDANTS FAIL TO SHOW THAT THE VIDEOS DEPICT LAW ENFORCEMENT TECHNIQUES AND PROCEDURES UNKNOWN TO THE PUBLIC AS REQUIRED BY EXEMPTION 7(E).

Where the purpose of a technique or procedure is medical treatment rather than law enforcement investigations or prosecutions, records are not exempt under 7(E). *See Allard K. Lowenstein Intern. Human Rights Project v. D.H.S.*, 626 F.3d 678, 682 (2d Cir. 2010) (holding "techniques and procedures" refers to how law enforcement officials go about investigating a crime). It remains undisputed that the treatment administered to Mr. Salameh served "to save his life," not to investigate crime. Phelps Supp. Decl. ¶ 24; Phelps Decl., Ex. A (listing objectives of hunger strike policy as prisoner health and welfare). Defendants so admit when they state: "BOP is not claiming that the actions of medical staff in inserting an intravenous line or a nasogastric tube are law enforcement techniques or procedures . . . ." Def's Reply 12.

Defendants' argument as to other portions of the videos, in which officers escort Salameh from his cell, place him in restraints, and return him to his cell, rely wholly on their portrayal of him as "noncompliant." *Id.* Contrary to Defendants' claim that Plaintiff asked the Court to "take

---

[2] *See* BOP Program Statement 5270.09, Inmate Discipline Program at 44–54, http://bit.ly/3cGkvMK (listing offenses).

3

the word of [Salameh] over agency declarants," Salameh's declaration provides the only first-hand account of the events and gives the viewer relevant context for the events. *See id.* at 16. Given this context—a physically weak prisoner who had not eaten in 27 days and who reflexively vomited[3] due to placement of the tube—Defendants' argument that the videos reveal techniques and procedures used to regain control of a noncompliant, resisting prisoner falls. *See id.* at 12.

Relevant to both Plaintiff's 7(E) and privacy arguments, is that the techniques and procedures depicted in the videos are already known to the public, disqualifying them from exemption. *See Schwartz v. D.E.A.*, No. 13-CV-5004(CBA)(RML), 2016 WL 154089, at *1011 (E.D.N.Y. Jan. 12, 2016), *aff'd*, 692 F. App'x 73 (2d Cir. 2017). Defendants do not contest that its own public policies, including the Hunger Strike policy and OSHA's protective gear list, describe details depicted in the videos. Defs.' Reply 12–13. They rely on inapposite cases that address details that were *not* in the public domain; here the details are known by the public, Salameh, and other prisoners.[4] *See ACLU v. DOJ*, No. 12-CV-7412 (WHP), 2014 WL 956303, at *8 (S.D.N.Y. Mar. 11, 2014) (exempting under 7(E) memo with very limited distribution within DOJ, discussing "sensitive investigative techniques" not publicly known); *Barnard v. DHS*, 598 F. Supp. 2d 1, 22–23 (D.D.C. 2009) (finding airport detention and search policies not known to public where travelers had basic awareness of some of them and where no policy publicly laid out techniques).

Defendants do not dispute Salameh's knowledge of "techniques and procedures" depicted in the videos (*e.g.* how restraints are used, types of restraints, hallways, cell doors, and exam rooms he traveled through); nor could they dispute them given that he experienced these events many dozens of times, as presumably did other prisoners during the more than 1,000 forced feedings and

---

[3] Reflexive vomiting is a well-documented complication. *See* Tetsuro Akashi et al., *Continuation of Enteral Nutrition & Relief from Vomiting by Administration of a New Formula: A Case Report*, 6 CLINICAL NUTRITION RES. 306 (2017)
[4] Defendants claim that the list of BOP protective gear referenced in its Use of Force Program Statement is not an exhaustive list, but do not argue that the gear in the videos is different than those listed publicly. Defs.' Reply 13 n.2.

4

hydrations at ADX. Defs.' Reply 12; *see* Stahl Decl. ¶ 6. In response, Defendants only attempt to question Salameh's ability to accurately recall details from 2015 and assert, without any support, that prisoners' knowledge "does not constitute public knowledge." Defs.' Reply 13. Finally, even if some techniques and procedures in the videos are exempt, Defendants fail to address how parts of a video depicting only events that are either not techniques or procedures for law enforcement investigations or are already in the public domain are not segregable. *See infra* Part V.

### III. DEFENDANTS CANNOT SHOW HOW HARM TO ANY INDIVIDUAL COULD REASONBLY BE EXPECTED AS REQUIRED BY EXEMPTION 7(F).

Defendants mischaracterize Plaintiff's argument as suggesting that they need to identify the individuals at risk of harm by "rank or name." They take the term "any individual" out of its statutory context and ignore caselaw to argue that it refers to absolutely anyone. Defs.' Reply 14. Rather, FOIA requires Defendants to identify a "small and specific" group at risk. *See ACLU v. DOD*, 543 F.3d 59, 67–68 (2d Cir. 2008). If their claim is literally anyone is at risk, or even all BOP staff—a group of over 35,000 people[5]—the risk of harm is plainly speculative. *See id.* at 71.

The agency declarations nowhere explain a plausible scenario for how disclosing videos of events Mr. Salameh, who is no longer confined in Florence ADX, experienced five years ago, and which have since been widely publicized via Ms. Stahl's article published in *The Nation*, would create fresh impetus for retaliation by Mr. Salameh or nondescript others. *See* Stahl Decl. ¶ 12. Instead, they marshal the fact of Salameh's communications and infractions from more than two decades ago, without evidence of recent communication or infractions since his completion of the Step-Down Program and move to general population at USP Big Sandy. *See* Salameh Decl. ¶ 3. Mr. Phelps incorrectly states that Mr. Salameh's past incident reports contain charges for assault

---

[5] Staff Ethnicity/Race, Federal Bureau of Prisons (Feb. 19, 2020), http://bit.ly/2VSZybr. Defendants claim that "inmates under [BOP's] charge" are also at risk of harm. Defs.' Reply 15. This group includes 175,315 people. Population Statistics, Federal Bureau of Prisons (Mar. 5, 2020), http://bit.ly/3aFqsrB.

5

on staff[6] and fails to account for the fact that 70 percent of these infractions occurred more than 20 years ago, and that the only one in the last nine years was for his refusal to obey an order on the day of his involuntary rehydration, due to his physical inability to comply. *See id.* ¶ 13.

Phelps' cites to Salameh's communication with confederates consists of letters written between 2002–2004 and two calls with his brother in 2008 and 2014. Phelps Supp. Decl., Ex. H; Phelps Supp. Decl. ¶ 8. Phelps attempts to draw a connection between these communication—one set of which is from nearly two decades ago, the other regarding matters unrelated to violence and anti-Americanism[7]—and the fact that "those who played a role in the 1993 attack" are viewed as heroes by Islamic extremists to establish the risk of harm. *See* Phelps Supp. Decl., Ex. H. Those facts alone do not demonstrate a sufficient nexus between disclosure and harm by Salameh or the vague group referred to as confederates. Citing examples of other in-prison violence in unrelated contexts does nothing to explain how or why retaliation is specifically likely to occur now, when those who sympathize with Salameh are already aware of his treatment by BOP, and Ms. Stahl's article brought renewed attention to his treatment. *See* Defs.' Reply 15; Stahl Decl. ¶ 12. The Defendants' claim that *Zander* supports deference to BOP here is incorrect because there, the court explicitly did not reach the issue, finding "deference is not necessary here because . . . the agency's assessment of the possible danger . . . [was] abundantly reasonable." *See Zander*, 885 F. Supp. 2d at *7. Finally, even if Defendants could demonstrate that disclosure poses harm to the BOP staff in the videos, they continue to fail to address why editing the videos to remove staff identities would not wholly resolve their safety concerns and this exemption. *See infra* Part V.

**IV.    DEFENDANTS FAIL TO MEET THEIR BURDEN TO JUSTIFY WITHHOLDING**

---

[6] Salameh did, however, receive an infraction over 26 years ago for assaulting another person without serious injury, for which he received a 15-day penalty; this is his most recent violent offense. Phelps Supp. Decl., Ex. C at 9.

[7] According to Defendants' documents, Salameh, in his 2008 call to his brother, asked him to meet with the family of another Jordanian also under SAMs to coordinate an effort to petition Jordan to intervene on their behalves. Phelps Supp. Decl., Ex. H. In the 2014 call, he asked him to convey a message to a lawyer not on his approved list. *Id.*

6

**ALL VIDEOS UNDER EXEMPTIONS 6 AND 7(C).**

Defendants fail to meet the threshold requirements of both privacy exemptions and to show that any privacy interests outweigh the public interest in disclosure. Defendants also fail to address whether editing the videos to hide identities of staff would alleviate their privacy concerns, or even whether each of the 13 videos reveal staff identities.

First, Defendants continue to misinterpret Exemption 6's threshold burden. The Second Circuit's decision in *Cook*, on which Defendants rely to support their assertion that the videos are personnel or "similar files," actually states that such files refer only to "detailed Government records on an individual which can be identified as applying to that individual." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014). The videos are not detailed records of BOP staff, but rather records of Mr. Salameh, whose privacy is not in question. Defendants also fail to meet the "law enforcement purposes" requirement of Exemption 7(C). *See supra* Part I.

Critically, Defendants have not shown that any privacy interest of BOP staff in the videos outweighs the public interest in disclosure, an interest that is extensive and specifically aimed at the administration of the government's duties with regards to hunger striking prisoners. *See* Pl.'s Mot. 22–23; *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Contrary to Defendants' claims, this public interest extends far beyond Stahl "and other journalists," as medical and bioethics professionals and legal scholars show significant interest in the issue as well.[8] *See* Defs.' Reply 17. Moreover, extensive reporting, as there has been on prison hunger

---

[8] Plaintiff previously provided the Court with many examples of national media's coverage of the government response to prison hunger strikes. *See* Pl.'s Mot. 22 n.11. In addition to those examples, the academic literature also reveals significant public interest in prison hunger strikes. *See, e.g.,* Mara Silver, *Testing Cruzan: Prisoners and the Const. Question of Self-Starvation*, 58 Stan. L. Rev. 631; Cochav Elkayam-Levy, *Facing the Human Rts Challenge of Prisoners' and Detainees' Hunger Strikes at the Domestic Level: Guidance for Policy-Makers, Gov't Officials, and Legal Advisors in the Management of Hunger Strikes*, 57 Harvard Int'l L.J. 1 (2015); Michael L. Gross, *Force-Feeding, Autonomy, and the Pub. Interest*, 369 N. Engl. J. Med. 103 (2013); *Int'l Council of Nurses Supports Rt to Refuse to Force-feed Prisoners at Guantanamo Bay*, World Med. Assoc. (Nov. 17, 2014), http://bit.ly/2PTeVwN; I. Miller, *A History of Force Feeding: Hunger Strikes, Prisons and Medical Ethics, 1909-1974* (2016).

7

strike responses, also reflects a wider public interest in the topic. *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 234 (D.D.C. 2012) (finding national media coverage to be clear indication of issue's "significant public value"); Pl.'s Mot. 1, 2, 22 n.11.

Finally, Defendants have not addressed how the interests of BOP staff differ from the medical staff, whose names were disclosed in Salameh's medical records. *See 100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 164 (D.D.C. 2017) (denying summary judgment on Exemption 7(C), stating DOJ had not made clear how interests of employees differed from one another); *see also* Stahl Decl., Ex. C. Finally, and as addressed *infra* Part V, Defendants have failed to explain why simply editing the videos to deidentify BOP staff would not alleviate any privacy concerns.

## V.   DEFENDANTS FAIL TO MEET THEIR BURDEN WITH REGARD TO SEGREGABILITY

Defendants state in a conclusory manner that any nonexempt information in the videos "is inextricably intertwined with exempt information" and that "every second of each of the videos" is exempt. Fenstermaker Suppl. Decl. ¶ 5; Defs.' Reply 19. Although the agency may be "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material …that *does not* excuse the agency from carrying its evidentiary burden to fully explain its decisions on segregability." *100Reporters LLC*, 248 F.Supp.3d at 165 (emphasis added); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (stating that burden lies with government to show that no segregable nonexempt portions withheld). Defendants fail to describe how and why there is no segregable material in the videos. *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) ("blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability.")

Defendants fail to explain how blurring faces or otherwise editing to deidentify BOP staff would not alleviate any purported danger from disclosure. Additionally, there appear to be several

8

discrete nonexempt portions of the videos. Defendants state that "BOP is not claiming that the actions of medical staff in inserting an intravenous line or a nasogastric tube are law enforcement techniques or procedures under Exemption 7(E)." Defs.' Reply 12. Further, because the names of medical staff who actually performed the procedure were already released to Plaintiff (Stahl Decl., Ex. C), Defendants' 7(F), 7(C) and 6 concerns are obviated; these moments of the actual insertion of the intravenous line or nasogastric tube should thus be disclosed. *See* Defs.' Reply 12.

Other apparently nonexempt portions of the videos depict areas at Florence ADX already familiar to prisoners. The video shows Mr. Salameh in areas where prisoners are taken routinely, such as Salameh's cell, the medical exam room, and hallways between the two. Salameh Decl. ¶¶ 8–19. Indeed, Defendants' claim that the specific layout of the medical area at Florence ADX is exempt from disclosure because it is not in the public domain is faulty, considering the fact that prisoners routinely visit the medical area at Florence ADX. *See* Fenstermaker Decl. ¶ 22.

Defendants' argument that they lack the technology sufficient to edit the videos in order to segregate any nonexempt portions of the videos for disclosure is inconsistent with available facts. *See* Defs.' Reply 19, 20; Fenstermaker Suppl. Decl. ¶¶ 3–4. First, their argument ignores that both BOP and its parent agency DOJ are Defendants in this action. *See* 28 C.F.R. § 0.1 (listing BOP as "organizational unit" within DOJ). DOJ regularly edits BOP videos in civil and criminal cases and can thus do so here. [9] *See* Order at A*., USA v. Con-ui*, No. 3:13-cr-00123 (M.D. Pa. Jun 25, 2013), ECF No. 985 (permitting DOJ to edit BOP videos); *Womack v. Smith*, No. 1:06-CV-2348, 2012 WL 1245752, at *11 (M.D. Pa. Apr. 13, 2012) (instructing DOJ to cut two hours of BOP video

---

[9] The cases that Defendants cite in their reply regarding BOP's inability to edit video are ones in which plaintiffs, all pro se, did not provide examples contradicting BOP's assertions. *See* Defs.' Reply 20; *see also* Pl.'s Sur-Reply ¶ 9, *Evans v. BOP*, No. CV 16-2274 (D.D.C. Nov. 8, 2017), ECF No. 21; Pl.'s Mot. at 4, *Milton v. DOJ*, No. 08-242 (D.D.C. Oct. 20, 2009), ECF No. 25; *Antonelli v. BOP*, No. 07-2016 (D.D.C. 2008); Pl.'s Reply at 4–5, *Mingo v. DOJ*, No. 10-1673 (D.D.C. Feb. 28, 2011), ECF No. 15.

9

down to 20 minutes and to edit out excessive nudity); *Milhouse v. Jordan*, No. 1:CV-09-01365, 2011 WL 662635, at *2, n.5 (M.D. Pa. Feb. 14, 2011) (noting BOP defendants provided prisoner plaintiff with redacted video footage of cell extraction); *Kubik v. BOP*, No. 10-6078-TC, 2011 WL 2619538, at *12 (D. Or. July 1, 2011) (permitting BOP to edit prison surveillance video of riot to remove weapons storage area); *Prison Legal News v. Exec. Office for U.S. Attorneys*, No. 08-CV-01055, 2009 WL 2982841, at *4–5 (D. Colo. Sept. 16, 2009) (ordering BOP video edited to conceal where genitalia was shown to protect privacy), *aff'd, appeal dismissed in part*, 628 F.3d 1243, 1247 (10th Cir. 2011) (noting that defendants edited video as district court had ordered). Given that Defendants have already shown the capacity to edit BOP video, and that in the year 2020 video-editing software is readily available,[10] their claim that they have no capacity to segregate nonexempt material from the videos should be rejected.

      Finally, FOIA does not mandate disclosure only if agencies will bear no cost. Courts have long recognized that in order to comply with FOIA's mandate, agencies must expend resources on document review and redaction. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) (recognizing that segregability requirement likely "add[s] significantly to the resource costs an agency must bear"); *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 955 F. Supp. 2d 4 (D.D.C. 2013) ("FOIA's . . . burden is likely to create significant costs for government agencies as they respond to requests, but '[t]he costs must be borne . . . if the congressional policy embodied in FOIA is to be well served.'"). Defendants burden here would be minimal, as the videos total only two and a half hours in duration. Phelps Decl. ¶¶ 23, 37. BOP and DOJ cannot simply circumvent FOIA and its presumption of disclosure by claiming to be unable to edit video each and every time video containing some nonexempt material is requested.

---

[10] In fact, there are many video-editing products geared toward law enforcement agencies. *E.g.,* CaseGuard (2020), http://bit.ly/39zua5X; Watch Guard (2020), http://bit.ly/3aEPN4I; FastRedaction (2020), http://bit.ly/2vEiiRr.

**Dated: March 9, 2020**

_____/s/_____
BETSY GINSBERG
Director
Cardozo Civil Rights Clinic

KHARIS LUND
CIERA FOREMAN
Legal Interns
Cardozo Civil Rights Clinic
55 5th Ave., 11th Floor
New York, NY 10003
(212) 790-0871
Betsy.ginsberg@yu.edu

*Attorneys for Plaintiffs*