UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**AVIVA STAHL**,

                        Plaintiff,

v.

**FEDERAL BUREAU OF PRISONS**, and
**DEPARTMENT OF JUSTICE**,

                        Defendants.

No. 19-cv-4142 (BMC)

---

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BETSY GINSBERG
Benjamin N. Cardozo School of Law
Civil Rights Clinic
55 5th Avenue, 11th Floor
New York, NY 10003
(646) 592-6495
Betsy.ginsberg@yu.edu

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT………………………………………………………..…1

ARGUMENT……………………………………………………………………………....3

    DEFENDANTS HAVE NOT MET THEIR BURDEN ON SEGREGABILITY………...3

        A. Obscuring Staff Faces and Other Identifying Information is
           Technically Feasible………...………………………………………………….4

        B. Obscuring Staff Faces and Other Identifying Information, is All
           That Required to Comply with This Court's Order…………………..…...……7

        C. Editing the Videos to Comply with This Court's Order Would Not
           be Unduly Burdensome………………………………………………………9

CONCLUSION………………………..……………………………………………………10

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT………………………………………………………..…1

ARGUMENT……………………………………………………………………………....3

    DEFENDANTS HAVE NOT MET THEIR BURDEN ON SEGREGABILITY………...3

        A. Obscuring Staff Faces and Other Identifying Information is
           Technically Feasible………...………………………………………………….4

        B. Obscuring Staff Faces and Other Identifying Information, is All
           That Required to Comply with This Court's Order…………………..…...……7

        C. Editing the Videos to Comply with This Court's Order Would Not
           be Unduly Burdensome……………………………………………………….9

CONCLUSION………………………..……………………………………………………10

## TABLE OF AUTHORITIES

**CASES**

*Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014)…………………10

*Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 587 (D.C. Cir. 2020)…………...…………..4

*Jacobson v. Ithaca City Sch. Dist.*, 53 Misc. 3d 1091, 1095, 39 N.Y.S.3d 904, 908
 (N.Y. Sup. Ct. 2016)……………………………………………………………………8

*Kimberlin v. DOJ*, 139 F.3d 944, 949–50 (D.C. Cir. 1998)…………………………………….3

*Kwoka v. Internal Revenue Serv.*, No. 17-CV-1157 (DLF), 2018 WL 4681000
 (D.D.C. Sept. 28, 2018) ……………………………………………………………..9-10

*Sampson v. City of El Centro*, No. 14-cv-1807, 2015 WL 11658713
 (S.D. Cal. Aug. 31, 2015) ……………………………………………………..……………7,8

*Stahl v. Dep't of Just.*, No. 19-CV-4142 (BMC), 2021 WL 1163154
 (E.D.N.Y. Mar. 26, 2021)………………………………………………...………..*passim*

*United States v. Dimora*, 862 F. Supp. 2d 697, 709 (N.D. Ohio 2012)………………………….8

*Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. U.S. Dep't of Homeland Sec.*,
 8 F.Supp.3d 188, 202–04, 2014 WL 1284970, at *4–5 (D.Conn. Mar. 31, 2014) ……...10

**STATUTES**

5 U.S.C. § 552(b)(7)……………………………………………………………………………3, 8

## PRELIMINARY STATEMENT

Plaintiff Aviva Stahl, an investigative journalist, brought this action against Defendants Department of Justice (DOJ) and Federal Bureau of Prisons (BOP) under the Freedom of Information Act (FOIA) seeking access to videos of the intravenous rehydration and nasogastric tube feeding of Mohammad Salameh after his 2015 hunger strikes at the Florence ADX prison. Defendants moved for summary judgment claiming that all thirteen videos in their entirety were exempt from disclosure. Plaintiff cross moved arguing that the videos were not exempt and that to the extent they contained any exempt material, it was reasonably segregable. The Court held that certain segments of the videos fell within FOIA exemptions, granting Defendants motion in part. It also held that the remaining portions contained some exempt material, namely staff identities, and reserved judgment as to these segments pending supplemental submissions by the parties. Plaintiff submits this memorandum of law and the Declaration of Erica Berenstein in response to the Court's request and in response to Defendants' May 13, 2021 submission.

Defendants have withheld thirteen videos, six of which document the intravenous hydration on November 4, 2015 and seven of which document the nasogastric tube feeding on November 11, 2015. *Stahl v. Dep't of Just.*, No. 19-CV-4142 (BMC), 2021 WL 1163154, at *2 (E.D.N.Y. Mar. 26, 2021). For each event, there are two sets of videos, each taken from different camera angles. Defs' Supp. Mem. at 1. This Court held that certain segments of the videos are exempt under FOIA's Exemption 7(F), which shields records that could be expected to endanger an individual's physical safety. *Id* at *5. Specifically the Court held that the following three segments were exempt under 7(F): "(1) the entire first segment, when the BOP staff identify themselves and detail their responsibilities; (2) the entire final segment, when the staff again identify themselves and debrief the events; and (3) the portion of the middle segment that shows the staff traveling to Salameh's cell, placing Salameh in restraints, and bringing him to another

1

room." However, the Court held that the "remaining portion" of the videos does not raise the same safety concerns that justify withholding the above-mentioned portions. The remaining portion "shows medical staff conducting the physical examination, ordering that Salameh undergo involuntary medical treatment, and implementing that treatment." In finding this reasonably segregable portion (*Id*. at \*6) non-exempt, the Court noted that much of this segment shows events that take place after Mr. Salameh was restrained and that Mr. Salameh was in a weakened state such that he would be unable to resist. *Id*.

The Court then held that "to the extent the remaining portion reveals the staff's identities, that information is 'reasonably segregable' from non-exempt information. *Id*. Noting that Defendants bear the burden of establishing segregability, the Court found that Defendants failed to overcome the "commonsense conclusion" that obscuring faces or otherwise deidentifying the staff depicted in the videos was feasible. In response to Defendants' assertion that BOP lacked the technical ability to redact exempt information from video, the Court noted that "an agency cannot credibly claim that it lacks access to this technology" and that "video editing has become commonplace in litigation." *Id*. at \*7.

In their supplemental briefing, Defendants no longer claim that they lack access to the technology. Instead, they put forth the declaration of a BOP employee who admits that in the normal course of his work he does not edit to black out or blur content, as is required here, and states that he was "asked to attempt to edit the… videos at issue" because the software he regularly uses has the capacity to make these types of edits. Declaration of John Baumchen (Baumchen Decl.) ¶ 3. Plaintiff relies on the Declaration of Erica Berenstein (Berenstein Decl.) who has more than a dozen years of video-editing experience and who regularly uses the Adobe editing software that Baumchen relied upon. Ms. Berenstein asserts that video quality and movement in and of out

2

the frame does not hamper one's ability to blur or otherwise obscure identity of subjects. Berenstein Decl. ¶¶ 5, 8. Moreover, she notes that Mr. Baumchen was not using the correct editing tools that one would use for this task and explains how an editor would take on this task, noting its relative simplicity and that it does not even require the skills of a professional editor like herself. She also notes that there are several free online tutorials that explain this process. Id ¶¶ 6-8. Additionally, although the Court found that staff identities were the only exempt information in the remaining portion, Baumchen noted that he understood that the Court had ordered BOP to determine whether it could edit the videos both to "obscure the identities of BOP staff and *other protected information*" *Id* (emphasis added). Nowhere does Baumchen claim that he cannot edit the videos to obscure staff faces only.

While Defendants claim they have "not been successful in [their] efforts to segregate any non-exempt information in the videos," (Defs' Supp Mem. at 3) they cannot meet their burden to show that staff identity information cannot be reasonably segregated from the remaining portion of the video. Nor can Defendants establish that it would be unduly burdensome for them to edit the remaining portion of the video. Plaintiff respectfully requests that the Court order production of the remaining portion with staff identities obscured.

## ARGUMENT

### DEFENDANTS HAVE NOT MET THEIR BURDEN ON SEGREGABILITY

FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt. . . " 5 U.S.C. § 552(b). "Defendants bear the burden of establishing segregability." *Stahl* at *6 To withhold the entirety of a record, the agency *must* show that it cannot segregate exempt material from non-exempt, and the agency must disclose as much as possible. *Kimberlin v. DOJ*, 139 F.3d 944, 949–

3

50 (D.C. Cir. 1998). The obligation to produce non-exempt segregable information applies to videos just as it applies to documents. *Stahl* at *8 citing *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 587 (D.C. Cir. 2020) ("[J]ust as defendants could redact an individual's name from a document, they could blur the faces of the medical staff, crop the videos, or even isolate screenshots.") That providing segregable, non-exempt information would "require some video editing" does not excuse Defendants from producing that information. *Stahl*, at *7.

This Court found Defendants' representations about segregability at summary judgment to be "wholly conclusory." *Id* at *6. Defendants insisted that "BOP does not have the technical capacity to edit or redact exempt information." *Id*. at 7; Fenstemaker Decl. ¶ 48. Now, however, and in light of this Court's finding that "video editing is routine and inexpensive," and that "an agency cannot credibly claim that it lacks access to this technology," Defendants shift their argument. They misinterpret this Court's decision finding that the only exempt material in the remaining portion of the video is staff identities. Rather than attempting to edit the videos simply to obscure staff identities, they attempt to obscure far more information, such as the restraints on Mr. Salameh, and then claim that the editing process is too difficult. Defendants cannot establish that obscuring staff identities is too burdensome nor can they justify the need to edit beyond what this Court required. Even if Defendants were entitled to obscure more than just staff identities, they cannot, through their submission, establish that the editing task would be too burdensome or unfeasible.

    A. Obscuring Staff Faces and Other Identifying Information is Technically Feasible

Defendants present a declaration from BOP staff member John Baumchen, who is unable to establish that the videos cannot be edited in order to obscure staff identities. Mr. Baumchen made clear that he does not have much experience editing video to blur content or obscure

4

identities. Baumchen Decl. ¶ 3 ("In the normal course of my duties… I do not edit for the purpose of blacking out or blurring content of the video, or obscuring the identity of individuals participating in the video."). He notes that he was asked to try to edit the videos in this case because he has access to the software that allows users to edit videos this way. *Id*. Mr. Baumchen claimed that the poor quality of the videos and the staff member movement made it difficult to use the software's automatic tracking features. Id. ¶ 5. He did find that although he could blur their faces, their skin color, accessories, assistive devices, and protective gear were visible. Id ¶¶ 6-10. In some portions of the video, Baumchen said he was unable to obscure the restraints that were on Mr. Salameh and the officers' hand placement on him. Id ¶ 10. He claims it would take approximately eight hours to edit 30 minutes of video "in a manner consistent with the Court's order." *Id.* ¶ 12.

      Mr. Baumchen, who admits a lack of experience in this type of editing, is incorrect in a number of his assumptions and did not use the appropriate editing tools. Plaintiff presents the declaration of Erica Berenstein, a video producer and editor with 15 years of experience, including in many situations that required editing video to protect the identity of news sources. She is the Executive Producer for News and Documentary Video at Insider, Inc. where she supervises a team of 27 producers and video editors. Berenstein Decl. at ¶ 1. Ms. Berenstein has worked on numerous projects that have required her to obscure a person's identity. She also has experience obscuring other identifying traits, such as unique items of clothing. *Id* at 5. Ms. Berenstein notes that contrary to what Mr. Baumchen has asserted, "the quality of the video footage does not impact the ability to obscure any kind of detail." *Id*. ¶ 5. Ms. Berenstein has experience obscuring the identity of subjects in video saved at very poor resolution, including policy body cam footage, surveillance footage, and cellphone video. *Id* ¶ 4. Similarly, Baumchen claims that the movement of staff in and out of the frame made the editing feature he was using nearly impossible to use. Baumchen

5

Decl. ¶ 5. However, as Ms. Berenstein notes, "[w]hether a subject enters or leaves a frame is irrelevant to whether it is possible to mask them." She notes that it requires the editor to segment the video, a process that she carefully explains and which she attests is both "quick and easy." Berenstein Decl. ¶ 8.

Defendants do not establish that there are identifying features other than faces of any of the individuals in the video that cannot be obscured. They state that the skin and hair color of the staff is visible, and in his declaration, Relvas claims that skin color could identify the medical professional because there is a "limited" number of medical staff at the prison. Declaration of J. Relvas ¶ 11. Defendants do not provide adequate information about the kinds clothing, equipment or features that would tend to identify any of the staff depicted in the videos. More importantly, however, they cannot establish that such items cannot be blurred or otherwise obscured in the video. See Berenstein Decl. ¶ 8 (asserting that manual editing process that she describes can obscure both faces and other identifying objects). Furthermore, Defendants do not establish that the medical professional's skin color is both identifying and cannot be obscured. Aside from noting that the number of medical staff at ADX is "limited,", they do provide adequate information to assess whether in fact the skin color of one medical professional is identifying. More importantly, rendering the video into black and white or adjusting color saturation and/or hue can easily obscure an individual's skin color, something Defendants do not even claim to have tried, despite that it is quite simple. *See* Berenstein ¶ 9.

Defendants claim that they would need to edit the sound in the video to comply with the Court's order and that doing so would be burdensome. Again, Defendants misunderstand the editing process. A "pitch shifter" filter would allow the editor to easily obscure voices. The only

6

time consuming part of this process is rendering, which does not require the active participation of the editor. *Id.* ¶ 13.

Furthermore, the "mask and track" feature that Mr. Baumchen attempted to use to edit the videos is simply not the appropriate tool for this task. This is a relatively new tool and one that neither Ms. Berenstein nor her staff—who regularly use Adobe Premiere Pro for editing—use for this type of editing task. *Id.* ¶¶ 5, 7. Rather they would simply do this process manually, as they do for news segments that require rapid turnaround. *Id.* This is a relatively simple process for which there are numerous free online tutorials explaining how to do it. *Id.* Thus, Mr. Baumchen's difficulty editing this video did not result from the poor quality of the video, or from the movement of subjects in and out of the frame. Rather, "this standard use of Premiere software was outside his skill set," despite that it is not a challenging process. Id. ¶ 11. It does not appear that Mr. Baumchen took any steps to familiarize himself with the typical methods for obscuring identities in video either through the online resources that Ms. Berenstein mentions or through inquiring of other staff at DOJ or BOP who have edited video for similar purposes, such as in litigation.

      B.      Obscuring Staff Faces and Other Identifying Information, is all That is Required to Comply with This Court's Order.

Defendants claim that in order to produce the videos without exempt material, they would not only need to blur staff faces, but they would need to obscure such information as their clothing, their protective gear, their position in the room and Mr. Salameh's restrains. Defs. Supp. Mem. at 5-6. Defendants ignore this Court's holding that the only exempt material in the remaining portion is staff identity.

Typically, blurring or redacting the face of a subject is adequate to protect a subject's identity. *See Sampson v. City of El Centro*, No. 14-cv-1807, 2015 WL 11658713, at *7 (S.D. Cal.

7

Aug. 31, 2015) (allowing a defendant police department "to blur/redact the faces" in videos subject to a protective order); *United States v. Dimora*, 862 F. Supp. 2d 697, 709 (N.D. Ohio 2012) (requiring government to blur faces of third parties in stills from surveillance video before releasing in criminal case) *Jacobson v. Ithaca City Sch. Dist.*, 53 Misc. 3d 1091, 1095, 39 N.Y.S.3d 904, 908 (N.Y. Sup. Ct. 2016) (requiring redaction of faces of students in video produced under freedom of information request). Defendants have not established that there are other identifying features of any of the individuals in the video.

Defendants ignore this Court's order that only the identities of the staff in the remaining portion are exempt. The Court found certain portions of the videos exempt under 5 U.S.C. § 552(b)(7)(F), which shields information that "could reasonably be expected to endanger the life or physical safety of any individual." In particular, the Court found that portions of the video that "reveal the BOP's procedures for removing prisoners from their cells" would be exempt under 7(F). *Stahl* at *5. Because the videos show how the staff use protective gear and security equipment to "restrain an inmate, remove him from a cell, and move him to another part of the prison," the Court applied exemption 7(F). The Court also found the names, titles and job responsibilities of BOP staff exempt under 7(F) and 7(C). The Court found that exemption 7(F) did not, however, reach the portion of the video that "shows medical staff conducting the physical examination, ordering that Salameh undergo involuntary medical treatment, and implementing that treatment" except to the extent that it revealed staff identities. *Id* at * 6. The Court specifically found these procedures could not be expected to endanger any individual's safety in the way that revealing the procedures of a cell extraction could. *Id*. Nonetheless, in claiming that they cannot adequately edit the video to comply with the Court's order, Defendants look well beyond features that would identify the BOP staff in the video. They claim that they would need to obscure such information

8

as the protective clothing worn by the staff and the restraints worn by Mr. Salameh. Defs. Supp. Mem. at 4. However, the Court did not find that anything, other than the identity of staff, needed to be obscured in order to segregate exempt material. While the video of the cell extraction, which this Court found exempt from disclosure under FOIA, shows how staff *used* this gear in order to restrain and move Mr. Salameh, there is no similar claim with respect to the medical procedure. Stahl at *6 (finding that "the remaining portion does not raise the concerns that justify withholding the other portions of the video.").

In ruling that the remaining portion was not exempt from disclosure, the Court relied on the fact that Defendants could not show that Mr. Salameh resisted the medical treatment and that "much of the remaining portion shows the events that unfold after an inmate is restrained." Defendants unnecessarily complicate the editing task at hand by suggesting the need to obscure more than faces and any other identifying information. Nonetheless, as Ms. Berenstein states, even editing out "protective gear" and other items is still feasible. Berenstein Decl. ¶ 8. However, that would simply be unnecessary in order to comply with this Court's order. Defendants do not claim, nor could they, that protective clothing or the restraints on Mr. Salameh constitute identifying information.

C. Editing the Videos to Comply with This Court's Order Would Not be Unduly Burdensome.

Baumchen claims it would take approximately eight hours to edit a thirty-minute segment of video "in a manner most consistent with this Court's Order." He states that it would take an additional two to four hours to edit the sound. Plaintiff disputes these estimates (Berenstein Decl. ¶ 11) but notes that even if they were correct, this would not constitute an undue burden excusing production, especially given that each of the videos comprising the remaining portion is approximately thirty minutes long. Baumchen Decl. ¶ 9, 4. *See Kwoka v. Internal Revenue Serv.*,

9

No. 17-CV-1157 (DLF), 2018 WL 4681000, at *5 (D.D.C. Sept. 28, 2018) (requiring agency to produce documents that it claimed would take 2,200 hours to review and redact because this did not constitute unreasonable burden); *Cf Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (excusing production due to the unreasonable burden of a manual redaction process that would take 8,000 hours); *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. U.S. Dep't of Homeland Sec.*, 8 F.Supp.3d 188, 202–04, 2014 WL 1284970, at *4–5 (D.Conn. Mar. 31, 2014) (finding that FOIA request posed an unreasonable burden where reviewing and redacting personal identifying information would take twenty-seven years). Defendants' claim that the entire process would take "several months" appears to be based on Baumchen's estimate of the time it would take to edit all thirteen videos, even though the Court has found most segments entirely exempt. *See* Defs' Supp. Mem at n.9; Baumchen Decl. ¶ 12. Furthermore, that estimate does not reflect the actual person-hours this task would take, but rather the overall time it would take for Baumchen to complete the editing process while attending to his other duties; this does not speak to the burden of the task but rather to the production schedule. *See* Baumchen Decl. ¶ 12

## CONCLUSION

For the foregoing reasons, and those set forth in the accompanying declaration and Plaintiff's prior submissions on summary judgment, this Court should order Defendants to produce the remaining portion of the video.

Dated: Brooklyn, New York
      June 2, 2021                                            /s/
                                                                    BETSY GINSBERG
                                                                    Benjamin N. Cardozo School of Law
                                                                    Civil Rights Clinic

> 55 5th Avenue, 11th Floor
> New York, NY 10003
> (646) 592-6495
> Betsy.ginsberg@yu.edu