SDE:KMA; 2019V02252

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

AVIVA STAHL,

                Plaintiff,

  -against-

FEDERAL BUREAU OF PRISONS and
U.S. DEPARTMENT OF JUSTICE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action No. 19-CV-04142

(Cogan, J.)

# DEFENDANTS' SUPPLEMENTAL REPLY
# IN FURTHER SUPPORT OF
# DEENDANTS' MOTION FOR SUMMARY JUDGMENT

MARK J. LESKO
Acting United States Attorney
Eastern District of New York
217-A Cadman Plaza East, 7th Flr.
Brooklyn, New York 11201

June 9, 2021

Kathleen A. Mahoney
Assistant U.S. Attorney
    (Of Counsel)

Defendants Federal Bureau of Prisons ("BOP") and U.S. Department of Justice respectfully submit this reply supplemental memorandum of law in further support of their motion for summary judgment in this action brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Defendants again request that the Court dismiss this action. Plaintiff is not entitled to any relief under the FOIA.

At issue are thirteen videos of two involuntary medical treatments administered to inmate Mohammad Salameh during his hunger strike at the Administrative Maximum (ADMAX) United States Penitentiary in Florence, Colorado.[1] In responding to Plaintiff's FOIA request, the BOP withheld the videos in their entireties based on FOIA Exemptions 6, 7(C), 7(E), and 7(F), 5 U.S.C. §§ 552(b)((6), (7)(C), (7)(E), (7)(F). *See* Fenstermaker Decl. ¶ 17 and Ex. E (Dkt. #17-10 at 4-6); *see also id*. Ex. D (#17-9 at 2-3, 4-5).

In the Memorandum Decision and Order ("Order"), which granted Defendants' motion for summary judgment in part, the Court concluded that the first segments of the videos (in which the BOP staff identify themselves and detail their responsibilities), the portions of the middle segments showing the staff traveling to Salameh's cell, placing him in restraints and bringing him to another room, and the final segments (in which the staff again identify themselves and debrief the events) are exempt from disclosure. Dkt. #29 at 10, 21. The Court found that FOIA Exemption 7(F) applied to the BOP's procedures and security measures for removing prisoners from their cells during a calculated used of force, including the protective

---

[1] Six videos are of the administration of intravenous hydration on November 4, 2015, and the other seven are of the administration of liquid nutrition through a nasogastric tube on November 11, 2015; both sets comprise videos taken with two cameras at different angles. *See* Declaration of James Phelps dated December 18, 2019 (Dkt. #17-2) ("First Phelps Declaration") ¶¶ 4, 22-23, 36-37; *see also* Declaration of Erika Fenstermaker dated December 19, 2019 (Dkt. #17-5) ("Fenstermaker Declaration") ¶¶ 19-21.

1

gear worn, the security equipment, and how that equipment is used, and that the exemption also applies to staff's names, titles and responsibilities. *Id.* at 9-10. In addition, the Court found that the BOP staff's names and identifying information were protected from disclosure by Exemption 7(C). Dkt. #29 at 13-15.

However, the Court found that the conducting of the medical professional's examination and ordering and implementation of the involuntary medical treatment did not fall within Exemption 7(E). *Id.* at 10-11. Regarding the portions of the videos depicting the medical examinations and treatment, the Court concluded that it lacked sufficient information to determine whether the exempt information is reasonably segregable from non-exempt.[2] *Id.* at 1, 10-11, 20-21. The Court reserved decision and ordered supplemental briefing by the parties. *Id.* at 20-21.

Defendants' supplemental submission details the BOP's unsuccessful attempts to edit small samples of the poor quality videos to redact exempt information, and demonstrated that the non-exempt information is not reasonably segregable.[3] The BOP's declarations explain that editing out the ever-present exempt information was not feasible. Defendants also expressed their willingness to submit the videos, as well as the redaction attempts, for *in camera* review. Defs. Supp. Mem. at 9.

---

[2] In describing this portion of the videos, the First Phelps Declaration focused primarily on the actions of the medical staff. Dkt. #17-2 ¶¶ 30-33, 44-49.

[3] Defendants' supplement submission comprises the Supplemental Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Dkt. #31) ("Defendants' Supplemental Memorandum"), Declaration of John Baumchen (Dkt. #32) ("Baumchen Declaration"), and Declaration of J. Relvas (Dkt. #33) ("Relvas Declaration").

In response, Plaintiff maintains that Defendants misinterpreted the Court's decision and that the only exempt information to be redacted from the videos is faces and other identifying information, and obscuring that information is technically feasible. Plaintiff's Supplemental Memorandum of Law in Further Support of Her Cross-Motion for Summary Judgment and In Opposition to Defendants' Motion for Summary Judgment (Dkt. #34) ("Plaintiff's Supplemental Memorandum") at 4-9.

Defendants did not misinterpret the Order. Rather, it is Plaintiff who seeks to narrow the application of its holding. In addition to concluding that the names and identifying information of the BOP staff (including the medical professional) are protected from disclosure by Exemption 7(C), the Court found that the BOP's procedures and security measures for removing prisoners from their cells during a calculated used of force were protected from disclosure by Exemption 7(F). Dkt. #29 at 9-10, 13-15. The Court identified the specific protected information as the use of force team members' protective gear, their security equipment, and how that equipment is used. *Id.* at 9. The Court stated, "to the extent the videos show these procedures described above, the videos fall within Exemption 7(F)." *Id.* Although this holding is directly applied to the portions of the videos that were found to be exempt (*id.* at 10), the protected information is visible throughout the other portions of the videos.

The Court had only the descriptions of the videos in the First Phelps Declaration when it determined that it lacked sufficient information to determine whether protected exempt material could be reasonably segregated from the portions of the videos depicting the medical examinations and treatment. The First Phelps declaration focused primarily on the actions of the medical staff in describing the portions of the videos that show the medical examinations and treatments. Dkt. #17-2 ¶¶ 30-33, 44-49. However, Defendants' supplemental submission

provides more detail about what transpired during the medical examination and treatment portions of the videos. At all times, the BOP use of force team members remained close to, often surrounding, Salameh, and they are very visible throughout those portions of the videos. Relvas Decl. ¶¶ 5, 7-8; *see also* Baumchen Decl. ¶ 10. The team members' protective gear, security equipment, and use of the equipment and security measures are also pervasive throughout the entire videos, including the portions depicting the medical examinations and treatments. *Id.* As the Court found, this information is protected from disclosure by Exemption 7(F). Dkt. #29 at 9-10. This is in addition to the Exemption 7(C) protection afforded to the BOP staff members' identities.

Regarding the feasibility of editing the thirteen videos to redact all of the exempt information, the BOP explained its unfruitful efforts in its supplemental submission. *See* Defs. Supp. Mem. at 6-7. Plaintiff's declarant disagrees. However, she has not seen the videos and can only speculate about what they actually depict and whether it would be possible to edit them or what precisely would be entailed in terms of time and resources. More than just faces and ordinary clothing items would need to be blurred here. In addition to BOP staff members' faces (which do not remain steady and move in and out of the video frames), the videos also clearly show skin color, hair color, body build, and other personal features (such as accessories or assistive devices) that could be used to identify the individuals. *See* Relvas Decl. ¶ 9; Baumchen Decl. ¶¶ 5, 6, 7, 10. As Correctional Services Administrator Relvas stated, the medical professional could be identified based on skin color alone due to the limited number of medical professionals at ADX Florence. Relvas Decl. ¶ 11. The personal identifying information that would need to be redacted exceeds mere faces and clothing.

In addition, the portions of the videos depicting the medical examinations and treatments show the BOP use of force team members' protective clothing, security equipment, and use of that equipment. Relvas Decl. ¶¶ 7-8; *see id.* ¶¶ 9-10; Baumchen Decl. ¶ 6. These portions of the videos also reveal the use of force team members' positioning, hand placement on Salameh, the straps of the restraint chair, and the protective equipment on the team's hands. Relvas Decl. ¶¶ 7-8; *see id.* ¶ 11; Baumchen Decl. ¶ 7. This protected information would also need to be redacted.

Defendants believe that their supplemental submission demonstrated that the non-exempt information is not reasonably segregable. Nevertheless, Defendants welcome the opportunity to submit the videos, as well as the failed redaction attempts, for *in camera* review in accordance with the Court's instructions even in the absence of an express finding that such review is necessary.[4] Viewing of the videos will show what words may not have been able to adequately convey concerning their contents and the inextricable intertwining of the protected information with exempt information.

---

[4] The Order gave Defendants the option to submit the videos for *in camera* review, but then stated that in camera review may become necessary if Defendants' supplemental submission does not adequately address the segregability issues. Dkt. #29 at 20-21.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' Supplemental Memorandum and other prior submissions, Defendants' motion for summary judgment should be granted in its entirety, Plaintiff's cross-motion should be denied, and this action should be dismissed.

Dated: Brooklyn, New York
      June 9, 2021

MARK J. LESKO
Acting United States Attorney
Eastern District of New York
*Attorney for Defendants*
217-A Cadman Plaza East, 7th Flr.
Brooklyn, New York 11201

By: *Kathleen A. Mahoney*
Kathleen A. Mahoney
Assistant United States Attorney
(718) 254-6026
kathleen.mahoney@usdoj.gov