UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                            :
AVIVA STAHL,                                :
                                            :    **MEMORANDUM DECISION AND**
                            Plaintiff,      :    **ORDER**
                                            :
            - against -                     :    19-cv-4142 (BMC)
                                            :
DEPARTMENT OF JUSTICE and                   :
FEDERAL BUREAU OF PRISONS,                  :
                                            :
                            Defendants.     :
                                            :
----------------------------------------------------------X

**COGAN**, District Judge.

This Freedom of Information Act case has been resolved but for the issue of whether plaintiff is owed attorneys' fees and, if so, in what amount. I find that plaintiff has substantially prevailed in the case and is therefore eligible for attorneys' fees under the relevant statute, but the award she seeks is excessive. I therefore reduce her claim of $101,388.46 to $69,128.87.

## BACKGROUND

The facts underlying this case, although not containing its ultimate resolution, are set forth in Stahl v. Dep't of Justice, No. 19-cv-4142, 2021 WL 1163154 (E.D.N.Y. March 26, 2021), and thus will not be repeated at length here. To summarize, plaintiff is a progressive journalist who has undertaken a project of documenting the inhumanity of force-feeding prisoners convicted of terrorism in federal court who undertake hunger strikes. This particular case involved one prisoner, Mohammad Salameh, who went on a hunger strike while incarcerated at a Supermax facility, and when prison medical staff found him severely dehydrated, they put an IV drip on him. A week later, again after medical evaluation, medical staff put a tube down Salameh's nose through which a liquid nutritional supplement was poured

into his stomach. He regurgitated at least some of it; it is disputed whether he did so involuntarily or deliberately.

The case involves thirteen videos or segments of videos taken by the Bureau of Prisons contemporaneously documenting these two operations. After extensive and time-consuming litigation, I found that those portions of the tapes disclosing security measures taken with regard to the inmate and the identity of the persons involved in implementing the procedures were exempt from disclosure, but video of the actual medical interventions was not exempt. It took the Bureau of Prisons ("BOP") more time – too much more time – to get the redactions done, but ultimately, plaintiff received the redacted tapes and published an article in *The Nation* that displayed some of them in the online version. Out of 297 minutes of video footage, I ordered the BOP to produce 232 minutes. Plaintiff now seeks to recover $101,388.46 in attorneys' fees, plus the filing fee for this action ($400), as a prevailing party.

**DISCUSSION**

FOIA is a discretionary-award statute, permitting but not requiring a district court to award attorneys' fees to a prevailing plaintiff: "The court may assess against the United States…reasonable attorney fees…reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To "substantially prevail[]" means to "obtain[] relief through…a judicial order, or an enforceable written agreement or consent decree." Id. at (E)(ii). If the plaintiff has substantially prevailed, some FOIA case law suggests that is not enough; she must also show that she is "entitled to" an award, which means that four factors – (1) the benefit of the release to the public; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding – weigh in favor of an award. See Weisberg v.

Dep't of Justice, 745 F.2d 1476, 1498 (D.C. Cir. 1984) (cited with approval in Pietrangelo v. U.S. Army, 568 F.3d 341, 343 (2d Cir. 2009)). If a plaintiff shows that she substantially prevailed and the factors weigh in favor of entitlement to an award, then the court should evaluate the reasonableness of her fees.

Here, the BOP opposes any award on numerous grounds.

**I.  Did Plaintiff "Substantially Prevail"?**

The BOP's first argument is that plaintiff should only receive attorneys' fees for that portion of the case on which she prevailed, and that portion was relatively insignificant. The BOP points out that, a year prior to this litigation, it voluntarily turned over 2,622 pages without redactions of Salameh's medical records and another 42 pages with redactions as part of the administrative request process. It also points out that, of the four exemptions it raised, plaintiff succeeded on only one and part of another.

As to the documents that the BOP voluntarily produced pre-litigation, they are of little importance in determining whether plaintiff substantially prevailed in *this* action. The dispute in this case was always going to be over the videos of Salameh being force-fed. These are obviously what plaintiff wanted most because they are the most sensationalized evidence of what the BOP was doing to Salameh and, by implication, to other hunger-striking terrorist prisoners. And those are what she got, over defendants' objections. Almost everything else she received was background material. Indeed, the thesis of plaintiff's article in *The Nation* was that force-feeding of prisoners is *per se* illegal under international law. The videos formed the central part of her argument showing why that is the case.

As to the exemption arithmetic, defendants have a more valid point. It was not realistic for plaintiff to expect a court to publicly expose the identities of the prison personnel involved in

the force-feeding, nor the security measures taken regarding the movement and restraint of terrorism inmates. Much of this litigation could have been avoided had plaintiff simply recognized the wholly legitimate interest of the BOP in avoiding these disclosures. Accordingly, the Court will apply an appropriate reduction of the claimed fee to reflect the unnecessary litigation over this issue.

Finally, although the Court gave the BOP almost all the time it requested to obtain the Veritone video-editing software so it could redact the exempt material, it did not accept then and does not accept now that blurring and redaction of images had to wait the prolonged period that the BOP said it did. That kind of redaction has been commonplace in photojournalism and other areas of the film industry for many years. As the D.C. Circuit recognized a year before this Court did:

> [W]e live in an era in which teenagers regularly send each other screenshots from all sorts of video media. Presumably, most of these teenagers have fewer resources than the United States government. It is not at all clear why the government could not at least isolate some screenshots that would meet the same sort of segregability standards typically applied to printed material. The government further does not explain why it cannot by use of such techniques as blurring out faces, either in the video itself or in screenshots, eliminate unwarranted invasions of privacy. The same teenagers who regale each other with screenshots are commonly known to revise those missives by such techniques as inserting cat faces over the visages of humans. While we do not necessarily advocate that specific technique, we do hold that the government is required to explain why the possibility of some similar method of segregability is unavailable if it is to claim the protection of the exemption.

Evans v. Federal Bureau of Prisons, 951 F.3d 578, 587 (D.C. Cir. 2020).

The Veritone software for which the BOP was waiting no doubt provided at least one means of automating the redaction process. But waiting for automation to arrive does not justify the abandonment of manual efforts to make the redactions or to use some other software to

automate those efforts. Plaintiff should not be penalized for litigating over a delay that was for the convenience of the BOP.

## II.     "Entitlement" to a Fee Award

I am skeptical about whether the District of Columbia Circuit's decision in Weisberg, which imposes an additional step of "entitlement" to a fee award, is in fact a requirement in applying § 552(a)(4)(E)(i), although I recognize that district courts in this Circuit have assumed so. See Loglia v. I.R.S., No. 96-cv-2654, 1997 WL 214869, at *4 (S.D.N.Y. April 25, 1997); Ajluni v. F.B.I., 947 F. Supp 599, 610 (N.D.N.Y. 1996); Muffoletto v. Sessions, 760 F. Supp. 268, 275 (E.D.N.Y. 1991). Pietrangelo, the aforementioned Second Circuit case that references the Weisberg test, cited Weisberg only in dictum, as its rejection of attorneys' fees in that case was not tied to any of Weisberg's four factors. Nor has the Second Circuit applied Weisberg to reach a holding under § 552(a)(4)(E)(i) in any other case. In addition, the language of § 552(a)(4)(E)(i) does not differentiate it from other federal fee-shifting statutes that have no such additional step to determining recovery. See, e.g., 5 U.S.C. § 504 (actions against the United States); 29 U.S.C. § 216 (federal wage actions); 42 U.S.C. 1988 (civil rights actions).

Moreover, the Weisberg test is vague, value-laden, and therefore difficult to apply. Starting with the test's first factor, was plaintiff's article in *The Nation* "of benefit to the public?" One can certainly argue, as plaintiff believes, that any exposure of force used in connection with prisoners in U.S. custody is information that the public should have because it shows that its government is engaged in violations of international law. That would be thoroughly consistent with the broad purposes of FOIA to release such information (which is why the Court ordered it). Further, the effect of plaintiff's article is multiplied because the videos have been posted on various internet outlets.

5

On the other hand, one could argue that hand-picked, out-of-context descriptions and videos of force-feeding, shown to people having no background or training in penology, is misleading and inflammatory, and does not discuss with the reader/viewer the alternatives of either acquiescing to the prisoner's demands and letting him die of starvation or releasing him. One can also argue that publication of the violence involved in force-feeding would create a danger to U.S. armed forces, particularly those captured on the battlefield and American hostages. Cf. American Civil Liberties Union v. U.S. Dep't of Defense, 901 F.3d 125, 134-36 (2d Cir. 2018) (recognizing that under Protected National Security Documents Act of 2009, Secretary of Defense has broad authority to prevent release of photographs of prisoners notwithstanding FOIA).[1]

Factors two and three of the Weisberg test (plaintiff's commercial benefit and the nature of plaintiff's interest) seem similar to each other and are likewise vague. Cf. Muffoletto, 760 F. Supp. at 277 (factors two and three "are usually considered together"). Although plaintiff may see herself as a crusader to expose abusive prison practices, she has not told the Court whether *The Nation* paid her anything for her submission – I would presume that she did not donate her article without compensation. But to the extent she had a partial commercial motivation, I do not see why that diminishes her entitlement to recover fees. There wouldn't seem to me anything wrong with plaintiff having even a purely commercial motivation if the public benefits from the disclosure. And the "nature of the plaintiff's interest" seems the same here regardless of what her motivation to publish her article was.

---

[1] Indeed, plaintiff's article was hardly a balanced discussion of this highly complex issue. It quoted exclusively from human rights advocates and academics to support plaintiff's view, but mentioned only in passing that federal courts have almost uniformly upheld the right of prison authorities to impose force-feeding to prevent inmate death, without offering the reasoning of those courts. See, e.g., North v. Lockett, 756 F.. App'x 659, 660 (7th Cir. 2019); Aamer v. Obama, 742 F.3d 1023, 1040-41 (D.C. Cir. 2014); Grand Jury Subpoena John Doe v. United States, 150 F.3d 170, 172 (2d Cir. 1998); Martinez v. Turner, 977 F.2d 421, 423 (8th Cir.1992).

One can see how the fourth and final factor of the Weisberg test – whether the government agency acted reasonably – could be a relevant consideration in determining whether and how much to award in fees. Congress could certainly have conditioned recovery of fees on this factor. But, again, I have the same hesitancy in applying it as I do with the other Weisberg factors: namely, there is nothing in the language of the statute suggesting congressional intent to limit a prevailing plaintiff's recovery based on the strength of the agency's unsuccessful argument.

That is particularly true because other statutes where Congress allows recovery of fees from the government expressly impose such limitations. For example, the Hyde Amendment, 18 U.S.C. § 3006A (statutory note), allows a prevailing defendant in a criminal case to recover attorneys' fees and litigation expenses "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith." Similarly, Internal Revenue Code § 7430 allows a prevailing taxpayer to recover some attorneys' fees and costs against the IRS if, among other things, the position of the IRS was not "substantially justified." 26 U.S.C. § 7430(c)(4)(B). "Substantially justified" may sound a lot like Weisberg's "acted reasonably," but, again, the former is in a statute and the latter is not.

It may be that Weisberg is a relic of the "heady days," see Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 75 (2001) (Scalia, J., concurring), in which courts felt the need to supplement statutory text to make effective their perception of congressional purpose. Cf. Cannon v. Univ. of Chicago, 441 U.S. 677, 717-18 (1979) (Rehnquist, J., concurring) (expressing view that Congress often passes statutes without mentioning whether the statute includes a private right of action with the expectation that the judiciary will answer the question). In any event, because the Second Circuit has not rendered a precedential decision requiring

district courts to apply Weisberg, I decline to do so here and do not reach the parties' arguments on this score. Rather than attaching an additional requirement of "entitlement" where the statute does not impose one, I will stick to the statutory language. The statute expressly imposes the requirements that the plaintiff prevail in the action and the fees she claims must be reasonable. Congress can amend the statute if it wants to make recovering attorneys' fees in a FOIA action tougher than that.

Having already found that plaintiff is a prevailing party, what remains is for her to demonstrate that the fees and expenses she claims are reasonable.

## III. Rates and Hours

Plaintiff seeks a total $101,388.45 in attorneys' fees for 523 hours of work.

The lead attorney, Betty Ginsberg, is a professor and the Director of Clinical Legal Education and Director of the Civil Rights Clinic at the Benjamin Cardozo School of Law. She has over two decades of experience as a prisoners' and plaintiffs' civil rights attorney and has significant experience with federal and state freedom of information law requests. She spent 46 hours on the case and plaintiff seeks a rate of $650 per hour.

The remaining timekeepers on the case – about 477 hours – were law students in Cardozo's Civil Rights Clinic. Plaintiff seeks a rate of $150 per hour for each law student.

Using both the caselaw in the Eastern District of New York, see Simmons v. NYC Transit Auth., 575 F.3d 170, 174-75 (2d Cir. 2009); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 119-20 (2d Cir. 2007), amended on other grounds, 522 F.3d 182 (2d Cir. 2008), and my own experience in reviewing attorneys' fee applications, see New York City & Vicinity Dist. Council of Carpenters v. LILCO Constr. Corp., No. 17-cv-2696, 2020 WL 8084267, at *7 (E.D.N.Y. July 21, 2020), Attorney Ginsberg's

claimed rate of $650 per hour is simply too high. As plaintiff recognizes, there is a paucity of FOIA fee awards in this district, although there is one recent case that awarded $630 per hour. See Ctr. for Popular Democracy v. Bd. of Governors of Fed. Reserve Sys., No. 16-cv-5829, 2021 WL 4452202, at *11 (E.D.N.Y. Sept. 29, 2021). There is not enough of a sample of recent FOIA cases in this district to arrive at a reasonable rate.

The cases recognize that in determining what a willing and able plaintiff would pay, see Arbor Hill, 493 F.3d at 112, "similar" cases can form a useful analogy. See, e.g., Schwartz v. U.S. Drug Enf't Admin., No. 13-cv-5004, 2019 WL 1299192, at *9 (E.D.N.Y. March 1, 2019), report and recommendation adopted, 2019 WL 1299660, at *1 (E.D.N.Y. March 21, 2019). "Similar," however, does not have to mean identical, nor even that the comparable cases fall under the same statute as the subject case. Rather, the imputed rate charged by the bar that specializes in a certain kind of work (which usually exists) informs what a presumptively reasonable rate is.

I agree with plaintiff that cases under non-similar statutes like the Fair Labor Standards Act, which may have lower rates than those claimed here and on which BOP relies, see, e.g., Hong v. Mito Asian Fusion, Inc., No. 19-cv-3149, 2023 WL 3092722, at *6 (E.D.N.Y. April 26, 2023), are only tangentially useful in finding a reasonable rate here. Those cases have a distinct plaintiff's bar, but often are less complex than this kind of litigation.

There is, however, a well-established plaintiffs' civil rights bar in this district. Those cases sometimes involve obtaining documents under FOIA or New York's FOIL, or, at least, litigation with a public agency over disclosure within the pending case. Indeed, these civil rights cases often include damage actions under 42 U.S.C. § 1983; challenges to prison conditions; and even habeas corpus proceedings. They are in many ways similar to this case. Indeed, Attorney

9

Ginsberg is a member of that bar, as her posted biography shows. See

https://cardozo.yu.edu/directory/betsy-ginsberg .

Using fees received by this bar as a benchmark, Ms. Ginsberg's $650 per hour rate does not fit. The high end of the rate for prisoner and civil rights litigation in this district is about $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates. See, e.g., Santander Consumer USA, Inc. v. Port Auth. of New York and New Jersey, No. 20-cv-1997, 2023 WL 5758995, at *3 (E.D.N.Y. Sept. 6, 2023); Saleh v. Pretty Girl, Inc., No. 09-cv-1769, 2022 WL 4078150, at *31 (E.D.N.Y. Sept. 6, 2022). On occasion, a very prominent practitioner will receive $500 per hour. See Saleh, 2022 WL 4078150, at 32. Recognizing her experience and that this case has presented some issues not seen in prisoners' rights litigation, the reasonable rate for her time is $550 per hour.

The Government also objects to the $150 per hour rate for student interns at the Clinic. It notes that the usual rate for non-admitted attorneys and paralegals is $125 or less. See Santander, 2023 WL 5758995, at *5. Here, I have not been told if the clinical students who worked on this case were 1L, 2L, or 3L (although I presume there were no 1Ls). I regularly employ law students in my Chambers and although they can be quite helpful, their starting point is rarely close to that of my law clerks. I believe a reasonable hourly rate for these law students is $110 per hour.[2]

Finally, although Attorney Ginsberg's declaration asserts that "[t]he Clinic has carefully reviewed the time records to ensure that repetitive and unnecessary hours were excluded from the calculation," BOP has identified a number of specific entries that were

---

[2] Plaintiff asserts that the $150 rate claimed here is less than the $200 rate allowed for summer associates in Schwartz, 2019 WL 1299192, at *9. But it is dangerous to use the rates charged at Big Law firms (Schwartz involved Jenner & Block) as a comparable since those rates bear little resemblance to the rates (as well as the firm's salaries and expenses) charged by every other plaintiffs' bar that appears before this Court.

10

wrongly billed or insufficiently specified as relating to this matter. Some of them involve tasks in the preparation or dissemination of plaintiff's article; communications with then-Attorney in Charge of the Federal Public Defenders for the Eastern District of New York concerning the Metropolitan Detention Center in Brooklyn; outreach to public interest organizations; and non-specific billings for "email correspondence" and "email communications." Plaintiff has not responded to the individual entries that the Government has challenged, but notes that the Government is seeking a nearly 50% reduction of the total law student hours for identified entries that do not count towards that total.

I have reviewed the Government's specific challenges, although I am not obligated to do so. See Ethelberth v. Choice Sec. Co., No. 12-cv-4856, 2016 WL 11469536, at *13 (E.D.N.Y. Aug 5, 2016). A reasonable reduction for the improper and insufficiently detailed entries is 20 hours. Another 20 hours will be eliminated for the unnecessary work, described above, in plaintiff's doomed effort to obtain video showing the identity of government personnel and security measures used at the facility. These deductions shall be made from the hours billed by the law students.

## CONCLUSION

Plaintiff's motion for attorneys' fees and costs is granted in part and denied in part as follows: the Court awards plaintiff $20,632.50 for the work performed by Attorney Ginsberg ($450 per hour multiplied by 45.85 hours worked) and $48,096.37 for the work performed by the

law students ($110 per hour multiplied by 437.24 hours worked). Plaintiff is also awarded the $400 in costs that is claimed, for a total of $69,128.87.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
February 21, 2024